## Oxweld Acetylene Company, Appellant, v. Johnson.

*Contracts—Written contracts—Alteration of written instrument—Oral evidence in contradiction of—Fraud.*

Oral evidence is admissible to contradict or vary the terms of a written instrument, in case of fraud or misrepresentation.

Where there is positive testimony of fraud, the case is for the jury to determine whether or not one of the parties to a contract was persuaded, through misrepresentation, to sign the instrument, in the belief that it contained all of the conditions agreed upon orally, prior to the execution of the contract.

Where the circumstances surrounding the signing of the contract were such as prevented one of the parties from reading it, and there is a clear and definite averment of fraud or misrepresentation supported by evidence, the case is for the jury to determine whether or not the signature to the contract was fraudulently obtained.

Argued March 10, 1919. Appeal, No. 22, March T., 1919, by plaintiff, from judgment of C. P. Perry Co., Nov. T., 1916, No. 5, on verdict for defendant in the case of Oxweld Acetylene Company v. Charles L. Johnson. Be-

404, (1919).] Statement of Facts—Opinion of the Court.
fore ORLADY, P. J., PORTER, TREXLER, WILLIAMS and KEL-
LER, JJ. Affirmed.

Assumpsit on written contract of sale of gas generator.
Before KELLER, P. J.

The facts are stated in the opinion of the Superior
Court.

The jury rendered a verdict in favor of the defendant.
Plaintiff appealed.

*Errors assigned,* among others, were the charge of the
court, answers to points and refusal of plaintiff's motion
for judgment n. o. v.

*James M. Barnett,* and with him *Wilfred C. Roszell,*
for appellant.

*William H. Sponsler,* and with him *Walter W. Rice,*
for appellee.

OPINION BY TREXLER, J., July 17, 1919:

The agent of the Oxweld Acetylene Company agreed
verbally with the defendant to install an acetylene plant
at the latter's residence. The agreement was to be re-
duced to writing and the parties were to meet in a neigh-
boring town where the defendant was to sign it. What
happened there is set out in the opinion of the learned
trial judge on a motion for judgment n. o. v. "Upon his
arrival in town, he, the defendant, was taken to a dimly
lighted room in the Mansion House, by the said Hooker,
who handed to the defendant the alleged prepared writ-
ten order which he undertook to read when he discovered
that he had forgotten his glasses and therefore because of
his defective vision and the dim light he was unable to
read the paper; he so informed the agent but after hav-
ing repeatedly asked him if the paper contained every-
thing that had been verbally agreed upon at the farm in
the afternoon and being each time assured by him that

everything so agreed upon was in writing, he believed him and signed the same." The testimony of the defendant and his wife both showed that the written agreement submitted in evidence did not embody the same terms as the verbal agreement. Material parts were omitted. The assurances given by the agent proved false. The trial judge submitted to the jury the question of fraud in obtaining defendant's signature to the agreement. The question involved as stated by the appellant is, "Was the evidence of fraud in procuring the contract sufficient to warrant the submission of the case to the jury?" Both the defendant and his wife swore to the material facts. It could not be said as a matter of law that the evidence before us was not clear, precise and indubitable. It was sufficient to prove fraud. Whether it was true is a question of fact: See Pusic v. Salak, 261 Pa. 512; Gordon v. Great Atl. & Pac. Tea Co., 243 Pa. 330. This is not a case where simultaneously with the execution of the contract there was an oral understanding between the parties which was the inducement for the making of the written contract: Dynamo & Engine Co. v. Cement Co., 221 Pa. 160, but such as was present in Carrozza v. National L. Ins. Co., 62 Pa. Superior Ct. 153, where in an application for a policy of life insurance the agent did not truly report the facts as given by the insured or in Clayton v. Traction Co., 204 Pa. 536, where a release in a personal injury case was procured by fraud. In the latter case it was said: "These and other acts on the part of the company's agent, disclosed by the testimony, clearly constitute fraud, and having been established by the verdict of the jury, they relieve the plaintiff from the binding force of the instrument to which she attached her signature. The fraud perpetrated in procuring it, vitiated the paper and rendered it as inoperative and ineffective as though it had never been signed: In Green v. North Buffalo Township, 56 Pa. 110, it is stated that "there is a palpable distinction between a defense resting upon facts which are misstated in order to induce a party to enter into a

bond, the contents of which he knows and one resting on a misrepresentation of the contents of the instrument itself to an illiterate person." Although in the present case the defendant was not illiterate, the circumstances surrounding the signing of the contract were such as prevented him from reading it. Courts should be slow in allowing the integrity of written contracts to be attacked but when such contracts are procured through fraud they lose their sacred character and if the proof be clear, precise and indubitable they should be set aside.

We think the verdict should not be disturbed.

The assignments of error are overruled and the judgment is affirmed.