### HAMLING et ux. v. ÆTNA LIFE INS. CO. OF HARTFORD, CONN., et al.

Circuit Court of Appeals, Eighth Circuit.
July 15, 1929.

No. 8120.

M. F. Harrington, of O'Neill, Neb. (George M. Harrington, of O'Neill, Neb., was with him on the brief), for appellants.

C. C. Flansburg, of Lincoln, Neb., for appellee Ætna Life Ins. Co.

William I. Aitken, of Lincoln, Neb., for appellee Moore's Estate.

Before STONE and KENYON, Circuit Judges, and JOHNSON, District Judge.

JOHNSON, District Judge. This appeal is from a decree in favor of appellees foreclosing a mortgage upon 240 acres of land in Boyd county, Nebraska, the property of appellants. One hundred and sixty acres of this land were occupied by appellants, who are husband and wife, as a homestead. Two grounds are urged for the reversal, or rather the modification, of the decree—it being admitted that the mortgage is valid and the decree proper as respects 80 acres of the land

ordered to be sold. The first ground relied upon, as stated in appellants' brief, is: "That on the plain evidence and under the law of Nebraska the pretended mortgage on this homestead * * * is null and void."

The law of Nebraska relied upon, section 2819 of the 1922 Compiled Statutes, reads as follows: "The homestead of a married person cannot be conveyed or incumbered unless the instrument by which it is conveyed or incumbered is executed and acknowledged by both husband and wife."

Appellants in support of their contention cite the following Nebraska cases: Horbach v. Tyrrell, 48 Neb. 514, 67 N. W. 485, 489, 37 L. R. A. 434; Havemeyer v. Dahn, 48 Neb. 536, 67 N. W. 489, 33 L. R. A. 332, 58 Am. St. Rep. 706; Weatherington v. Smith, 77 Neb. 369, 112 N. W. 566; Thompson v. Foken, 81 Neb. 261, 115 N. W. 770; Storz v. Clarke (Neb.) 221 N. W. 101.

Appellees in answer to this contention of appellants say: "Section 2819 of the Compiled Statutes, 1922, is admitted; and the cases cited to sustain that statute are admitted. But the difficulty with appellant's brief is that there is no question of law involved, but only a question of fact."

They also claim that appellants are estopped. Appellees prevailed in the court below on this phase of the case, the court finding either that the certificate of the notary was in fact true, or that appellants were estopped to assert that the certificate was not true or both. The evidence in the record fairly sustains each of these findings, for we assume the trial court made both. As to the first, that is, as to the actual taking of the acknowledgment by the notary: Appellants and their three sons testified at the trial that the notary did not take the acknowledgment on the day the note and mortgage were signed, and appellants testified that the mortgage was not acknowledged by them at any other time. As against this testimony, the notary testified by deposition that, while she had no recollection of this particular transaction, it was her custom and practice to require the personal appearance of the signers of instruments; that she had no recollection of any exception to this practice, and that she did not think there was an exception in this case.

The certificate of the notary is regular on its face and recites: "That on this 12th day of July, A. D. 1920, before me, * * * personally came Stephen J. Hamling and Alvina, Hamling, husband and wife, to me personally known to be the identical persons whose names are subscribed to the foregoing

deed as grantors, and they severally acknowledged the said instrument to be their voluntary act and deed."

The rule to be applied in the determination of cases of the sort under consideration has been stated by the Supreme Court of the United States in a number of cases. In Howland v. Blake, 97 U. S. 624, 626, 24 L. Ed. 1027, that court said:

"The burden rests upon the moving party of overcoming the strong presumption arising from the terms of a written instrument. If the proofs are doubtful and unsatisfactory, if there is a failure to overcome this presumption by testimony entirely plain and convincing beyond reasonable controversy, the writing will be held to express correctly the intention of the parties. A judgment of the court, a deliberate deed or writing, are of too much solemnity to be brushed away by loose and inconclusive evidence."

In Northwestern Mut. L. Insurance Co. v. Nelson, 103 U. S. pages 544, 549, 26 L. Ed. 436, the court approved the language of Howland v. Blake above quoted and added:

"The acknowledgment of a deed can only be impeached for fraud, and the evidence of fraud must be clear and convincing."

In Young v. Duvall, 109 U. S. 573, page 577, 3 S. Ct. 414, 416 (27 L. Ed. 1036), the court, in discussing the weight to be given an acknowledgment regular in form, said:

"The certificate of the officer states every fact essential under the statute to make the deed, upon its being delivered for record, as effectual in law as if Mrs. Young was an unmarried woman. The duties of that officer were plainly defined by statute. It was incumbent upon him to explain the deed fully to the wife, and to ascertain from her whether she willingly signed, sealed, and delivered the same, and wished not to retract it. The responsibility was upon him to guard her against coercion or undue influence upon the part of the husband, in respect to the execution and delivery of the deed. To that end he was required to examine her privily and apart from the husband. These facts were to be manifested by a certificate under his hand and seal. Of necessity, arising out of considerations of public policy, his certificate must, under the circumstances disclosed in this case, be regarded as an ascertainment, in the mode prescribed by law, of the facts essential to his authority to make it; and if, under such circumstances, it can be contradicted, to the injury of those who in good faith have acted upon it—upon which question we express no opinion—the proof to

that end must be of such a character as will clearly and fully show the certificate to be false or fraudulent. Insurance Co. v. Nelson, 103 U. S. 544, 547 [26 L. Ed. 436]. The mischiefs that would ensue from a different rule could not well be overstated. The cases of hardship upon married women that might occur under the operation of such a rule are of less consequence than the general insecurity in the titles to real estate which would inevitably follow from one less rigorous."

The Supreme Court of Nebraska, in Council Bluffs Savings Bank v. Smith, 59 Neb. 90, 80 N. W. 270, 271, 80 Am. St. Rep. 669, in effect announced the same rule. The court said:

"The general rule is that the certificate of an officer having authority to take acknowledgments cannot be overthrown by showing that his duty was irregularly performed. He is the person designated by the statute to certify to the due execution of deeds, mortgages, and other instruments affecting the title to real property, and his official certificate, in regular form, is, in the absence of fraud, conclusive in favor of those who, in good faith, rely upon it. Any other rule would work incalculable mischief. It would open wide the door to fraud and perjury, and make recorded acknowledgments a snare to persons dealing with land on the faith and credit of the public records."

In passing it may be stated that this defense against the mortgage was in the nature of an afterthought, resulting from an inquiry by appellants' counsel more than seven years after the execution of the mortgage and the date of the acknowledgment. In view of the rule applicable in such cases, the trial court did not err in finding the fact against appellants.

And further the evidence shows: That both appellants intended to mortgage the homestead; that they received and used the money borrowed from the Ætna Company; that the persons through whom the loan was negotiated from the Ætna Company, and by whom the mortgage after execution was forwarded to the company, were appellants' agents, employed and paid by them; that the insurance company paid over the money, relying upon the validity of the mortgage and the truth of the notarial certificate.

There was no fraud or imposition practiced upon appellants by the notary or any one else. Appellants got what they bargained for, and they should not now be permitted to say that the recitals of the certificate of the notary are untrue. In support of this proposition in addition to the cases already cited,

see Linton v. National Life Insurance Co. (C. C. A.) 104 F. page 590; Grice v. Woodworth, 10 Idaho, 459, 80 P. 912, 69 L. R. A. 584, 109 Am. St. Rep. 214; Norton v. Nichols, 35 Mich. 148; Shivers v. Simmons, 54 Miss. 520, 28 Am. Rep. 372.

John H. Moore, one of the appellees herein, as the agent of appellants, negotiated the loan above mentioned from the Ætna Company. The record shows that he had been for many years in the loan business at Lincoln, Neb., and had previously placed loans with the Ætna Company. In respect to loans negotiated by him, it had become the practice of the Ætna Company to send the interest coupons to him, or to his company, the Security Investment Company, for collection. The interest coupon of $840 on the Hamling mortgage, due July 1, 1922, was so sent. On its receipt Mr. Hamling was notified and payment requested. In compliance he mailed to the Security Company on July 1st a cashier's check on the First National Bank of Spencer, Neb., his home town, payable to the order of the Security Company. It was stipulated at the trial:

"That said cashier's check was received by said Security Investment Company July 3, 1922, indorsed by the Security Investment Company, and deposited in the Central National Bank to the credit of said Security Investment Company, and was by said Central National Bank of Lincoln transmitted to the Omaha branch of the Federal Reserve Bank of Kansas City, and received by that bank July 5, 1922, and indorsed by it, by writing thereon 'Federal Reserve Bank of Kansas City, Omaha Branch,' and said Federal Reserve Bank of Kansas City, Omaha Branch, transmitted said cashier's check direct to the First National Bank of Spencer, Nebraska, and it was received by that bank on July 8, 1922, with other checks or drafts, and thereupon the First National Bank of Spencer, Nebraska, in payment of this cashier's check and other checks and drafts, sent to the Federal Reserve Bank aforesaid, on July 8, 1922, its draft in the following language:

"The First National Bank,     No. 55638
     "Capital and Surplus $120,000.00

"Pay to the order of Federal Reserve Bank Omaha $6,585.20 the sum of $6,585 and 20 cts.          H. S. Prouty, A Cashier.
"To Omaha National Bank, Omaha, Nebr."

"And that this draft was received by said bank at Omaha on July 10, 1922, and on the same day presented for payment to the Omaha National Bank, and payment refused, because the Omaha National Bank did not

at that time have in its possession sufficient money due the First National Bank of Spencer, Nebraska, to pay the said draft of $6,585.20.

"It is further agreed by the parties that the First National Bank of Spencer, Nebraska, continued to transact business as a national banking institution until July 13, 1922, when it was closed by order of the Comptroller of the Currency.

"It is further agreed that at the time of its closing July 13, 1922, its books will show said bank actually had in its vault in lawful money of the United States more than $6,000, and that it had that amount and more of actual money of the United States in its vaults at Spencer, Nebraska, on July 1, 1922, and continuously thereafter until after July 13, 1922, and the same is accepted as of like force, as if the books were introduced, the receiver examined on this matter.

"It is further agreed that throughout the year 1920 there was a state bank duly organized and doing business in Spencer, Nebraska, and known as the Corn Exchange Bank, and that said state bank was a legally organized Nebraska state bank and carrying on business as such.

"That in the year 1922 a letter mailed in Lincoln in the afternoon of one day would leave Lincoln at 7 o'clock a. m. of the next day and would arrive in Spencer in the evening of that day, and be delivered to the addressee the day following its arrival at Spencer.

"That it was the practice of the Security Investment Company and its unvarying procedure to indorse drafts and checks received for interest, and deposit the same in its bank at Lincoln for collection, and when it was notified that the same was paid, it forwarded the coupon to the borrower, but held the same for its protection until the remittance was actually paid, and that the practice in the above matter was the same as in the subsequent payments by Stephen J. Hamling, but the said Stephen J. Hamling knew nothing of said practice.

"That after the refusal of the Omaha National Bank to pay said draft to the Federal Reserve Bank, the Federal Reserve Bank charged back to the Security Investment Company said $840, which the said Security Investment Company repaid, and said coupon due July 1, 1922, was never surrendered to said Stephen J. Hamling."

It appears from the evidence that appellee Moore, at some time after the nonpayment of the cashier's check, paid the Ætna Company the amount due on the coupon and held it as his own. The Ætna Company made him a party defendant in the suit. He answered, and by way of cross-bill set up his ownership of the coupon and joined with the Ætna Company in asking for the foreclosure of the mortgage and judgment upon the coupon. The trial court granted the relief.

As a second ground for the reversal or modification of the decree appellants say: "That the evidence shows without dispute that the interest coupon claimed by Moore was paid in full." The argument in support of this contention is stated in the brief in this language:

"If this check had been sent to the other bank at Spencer and presented for payment, it would have been paid and there would have been no loss on the check. The inexcusable delay of the Security Investment Company, the agent of the plaintiff herein, caused this loss. John H. Moore was the president of that company. It is against the law of Nebraska that this interest coupon should now be held as a personal obligation of Stephen J. Hamling or as a lien on any of the land. The Nebraska cases which show the duty of forwarding the check promptly are uniform and clear. The Nebraska law is clear further on the proposition that when there are two banks in a town and a check is drawn on one of them and deposited with some other bank at a distance that it is the duty of the other bank in the other town to send it to another bank in the town but not to the bank on which it was drawn. Western Wheeled Scraper Co. v. Sadilek, 50 Neb. 105, 69 N. W. 765, 61 Am. St. Rep. 550. This last case was one where there were two banks in the same town.

"On the other proposition of transmitting the check promptly, regardless of banking usage, we cite you the following Nebraska case: First National Bank of Wymore v. Miller, 43 Neb. 791, 62 N. W. 195. Furthermore, they had no right to receive anything but cash in payment of this check. Federal Reserve Bank of Richmond v. Malloy, 264 U. S. 160, 44 S. Ct. 296, 68 L. Ed. 617, 31 A. L. R. 1261."

The statement of this defense in the pleadings is in substance that the Security Company, as agent of the Ætna Company, was negligent in not sending or causing the cashier's check to be sent directly to the Corn Exchange Bank of Spencer for collection from the First National Bank of that place. It may be assumed on the authority of First National Bank v. Federal Reserve Bank (C. C. A.) 6 F.(2d) 339, First National Bank v. First Utah National Bank (C. C. A.) 15

F.(2d) 913, and Federal Reserve Bank v. Malloy, 264 U. S. 160, 44 S. Ct. 296, 68 L. Ed. 617, 31 A. L. R. 1261, that the Federal Reserve Bank of Omaha became liable to some one on account of this cashier's check when it surrendered it to the First National Bank of Spencer and accepted another cashier's draft issued by that bank in its stead, and instead, also, of other items remitted with the said check.

The question before us, however, is not in respect to the liability of the Reserve Bank on the ground stated, nor is the question before us in respect to the liability of the Ætna Company or of the Security Company by reason of the release of some party to the check for failure to give notice of nonpayment. Nor is there any assertion of liability on the part of the Ætna Company on the ground that the check was sent or received as payment of the coupon. The claim is that the Ætna Company is liable because the Security Company failed to promptly present the check or cause it to be promptly presented to the First National Bank of Spencer for payment.

This claim is based upon two assumptions: (1) That the Security Company was the agent of the Ætna Company in the matter of collecting this check. (2) That the Ætna Company was chargeable with the negligence of the Lincoln bank in failing to forward the check directly to the Corn Exchange Bank of Spencer for collection from the First National Bank of Spencer, if such failure was negligence.

The answer to the first assumption is: When appellants in lieu of remittting cash sent the cashier's check of their home bank to the Security Company to be used in making payment of the coupon sent by the Ætna Company to it for collection they made the Security Company their agent to transmit the check for collection and payment in cash. The Security Company was without authority to accept anything else than cash as payment. Federal Reserve Bank v. Malloy, supra.

The answer to the second assumption is: When the Security Company deposited the check with the Lincoln bank for collection, it did that which is usual and customary in the business world everywhere. Neither it nor the Ætna Company was a bank, and was not chargeable with the duty of a bank in respect to the collection of the check. No authority has been cited, and we are advised of none, to the effect that business institutions other than banks do not perform their full duty when they promptly deposit checks with reputable banks for collection. If the Lin-

coln bank was negligent in handling the check, or if it incurred liability by reason of the act of the Federal Reserve Bank, appellants had their remedy. Under the New York rule, against the Lincoln bank; under the Massachusetts rule, directly against the Lincoln bank for its negligence, and directly against the Federal Reserve Bank for its default.

Finding no error in the record, the decree of the court below will be affirmed; and it is so ordered.