Smith *v.* Cleveland et ux., Appellants.

Argued March 9, 1943. Before KELLER, P. J., BALD-RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*James A. Cochrane,* for appellants.

*Elgin E. Weest,* for appellee.

OPINION BY STADTFELD, J., May 6, 1943:

This is an appeal by defendants from a decree in equity directing a reconveyance to plaintiff of certain real estate to which defendants had obtained a deed from plaintiff through alleged misrepresentation. The complainant, an elderly colored woman, 67 years of age, from her savings, purchased a lot of ground on Flower Street, in the Township of Chester, County of Delaware and State of Pennsylvania. On this ground she had erected a small home. After she had lived

there many years, she became destitute and, in order to survive, sought an old-age pension.

Next door to the complainant lived the defendants, also colored people, with whom she had been on friendly and intimate terms for some years. The complainant had worked at the Viscose Company with Mrs. Cleveland, one of the defendants, and confided in her as to her financial circumstances. Shortly after, the defendants told the complainant that they could secure her an old-age pension. The defendants had a deed prepared for the property conveying the title from the complainant to the defendants. They took her to the office of an attorney and had her sign the deed, she believing that what she was signing was an application for a pension but which turned out to be a deed. Shortly after, she found out what she had done and demanded that they return her property but they refused.

Plaintiff thereupon filed her bill of complaint averring that the defendants claimed that they could arrange for complainant to obtain assistance through an old-age pension. That by deception the defendants arranged for complainant to go with them to sign certain papers which they informed her were necessary to be signed in order for her to secure financial assistance. That she went with them at their request for the purpose of signing the papers which had previously been explained to her as being applications for old-age pension or assistance. That sometime subsequent to the signing of the papers complainant learned that the supposed application for old-age pension was in fact a deed of conveyance to the defendants of the premises which she owned at that time. She complained that the deed aforesaid was secured by fraud and misrepresentation and prayed for an order directing a reconveyance to her of the property aforesaid.

An answer was filed by defendants denying any deception or fraud practiced by them and averring that

complainant informed them she was about to lose her home and promised defendants that if they would pay up seven years taxes then owing on the property, make certain repairs, paper the house and supply food and spending money for life she would convey to them her property. That the complainant and the defendants visited the law office of Howard E. Hannum, Esq., and there arranged for the conveyance and the deed was prepared and executed with full knowledge of all parties, and in addition an agreement of maintenance was prepared and executed between the same parties, copy whereof is attached to the answer; that defendants within a short time thereafter paid all taxes in arrears and current, repaired the premises and until recently supplied all complainant's food, clothing, and spending money.

The case was heard before MacDade, P. J., who made certain findings of fact and conclusions of law and entered a decree nisi to which defendants filed nineteen exceptions. The exceptions were dismissed and a final decree entered, setting forth, inter alia, that the defendants by fraud and misrepresentation secured the signature of the plaintiff to the said deed of conveyance, and ordering and directing the defendants to reconvey the said premises to the complainant. From that decree this appeal has been taken by defendants.

We quote from the discussion by the Chancellor filed with his adjudication: "The gist of the plaintiff's testimony to which we now give credence, was to the effect that the defendants, husband and wife, talked to her (complainant), when in financial distress and the pressing by the County Treasurer of a sale of her home for non-payment of taxes, regarding the obtaining for her of an old-age pension. She testified as to their previous close friendship and to what extent she relied on their friendliness. She stated that they obtained the lawyer and had the deed for the property prepared, and then

took her to the office of the attorney for the purpose of signing the deed. She further testified that at the time she signed said paper, she did not know it was a deed but believed it was some sort of a paper that would aid her in securing an old-age pension. She testified that after she learned what had really taken place, she demanded the reconveyance of her property, but the respondents refused.

"Only one of the respondents, John Cleveland, took the witness stand. He testified that he had paid taxes on the property, which was denied by the plaintiff, and although the respondent offered duplicate receipts to show payment of taxes, the plaintiff produced the original receipts to substantiate her contention, that she, and not the respondent, paid the taxes.

"The husband respondent claimed that he had paid money out for repairs, but this was denied by the plaintiff, and the respondent offered no other evidence to substantiate this claim than this mere statement.

"The plaintiff is a widowed colored woman, sixty-seven years of age; (she cannot read and never had any schooling;) the respondents are likewise colored but much younger in years than the plaintiff.

". . . . . . Apparently, the defendants got themselves into a position of confidential relationship with the plaintiff, due to their great friendship and by reason of which it became feasible that fraud could be perpetrated upon the plaintiff, as she now asserts."

It should be noted that Rosella Cleveland, one of the defendants, wife of John Cleveland, was not called as a witness, nor was Howard E. Hannum, Esq., the attorney who prepared the deed, called, both of whom should have been able to throw considerable light upon the facts of this case.

When we examine the agreement Exhibit "A" attached to the answer executed between complainant and defendants, which provides the only consideration

passing to the complainant for the conveyance of the property is the agreement that "...... the said Bettie Smith shall from the date of these Presents, occupy the said premises, herself, rent-free, for the balance of the said term of her life," we find that none of the other items which defendants set forth in the answer are embodied in the agreement.

We quote from the opinion of the court: "The next exception is to finding of fact No. 18 of the Chancellor: 'That the defendants, while present in court, through their counsel, agreed to accept the sum of $209.17 which at that time they claimed to have expended on the property, and to reconvey the property to the plaintiff.'

"As to this finding of fact, we note the discussion before the Chancellor as to what took place and what was said with reference to reconveying this property. That a deed was drawn for the reconveyance, but counsel for the defendants afterwards came before the Chancellor and stated that they refused to carry out the agreement that they had made and would not sign the deed."

The attitude of the defendants, manifested by their conduct referred to, does not add to the credibility of their testimony in other respects.

While this offer to reconvey was made and agreed to by all the parties, the complainant at all times denied that she owed the defendants anything, and produced the original tax receipts to show that she and not the defendants had made the payments.

After a careful examination of the entire record we are of the opinion that the findings of fact by the Chancellor are fully supported by the testimony.

The remaining question is the application of the law to the facts as found.

The elderly complainant knew the defendants for a long time and by reason of this long and intimate acquaintanceship, the defendants enjoyed her confidence and she fully believed that anything they told her was the truth.

The principle controlling in this case is well set forth by Mr. Justice DEAN in *Stepp v. Frampton,* 179 Pa. 284, 36 A. 177, from which we quote as follows: "...... when the relations existing between the contracting parties appear to be of such a character as to render it certain that they do not deal on equal terms, but that on the one side, ...... from overmastering influence, or on the other side, from weakness, dependence, or trust justifiably reposed, unfair advantage in a transaction is rendered probable, then the burden is shifted, and the transaction is presumed void; and it is incumbent upon the party in whom such confidence is reposed to show affirmatively that no deception was used, and that all was fair, open, voluntary and well understood."

Also *Darlington's Estate,* 147 Pa. 624, 23 A. 1046, (opinion by Mr. Justice GREEN): we quote from the syllabus: "The rule is founded upon motives of general policy and is irrespective of any admixture of deceit, imposition, overreaching, or other positive fraud. There must be full and clear proof that the transaction was the free and intelligent act of the party, fully explained to him, and performed with a thorough understanding of the transaction and of its consequences."

Quoting from the opinion in *Pusic v. Salak,* 261 Pa. 512, 519, 104 A. 751: "Where an ignorant man by fraud and deception is induced to execute a deed of his property, which he is unable to read, under the representation, assurance and belief that it is an entirely different paper, equity has jurisdiction to decree the cancellation of the deed and restoration of the property."

We are of the opinion that the law was properly applied and that the conclusions of law necessarily followed.

The assignments of error are overruled and the decree of the court below is affirmed. Costs to be paid by appellants.