**POPOVITCH v. KASPERLIK.**
Civil Action No. 3605.

District Court, W. D. Pennsylvania.
Feb. 28, 1947.

See also 59 F.Supp. 993.

Martin E. Cusick, of Service, McNeal, Cusick & Isenberg, and Samuel Chiccarino, all of Sharon, Pa., for plaintiff.

John L. Miller, of Duff, Scott & Smith, of Pittsburgh, Pa., and Edwin L. Stanley, of Williams, Stanley & Andrews, of Youngstown, Ohio, for defendant.

WALLACE S. GOURLEY, District Judge.

The plaintiff brought this action in equity for the cancellation of a deed, said proceeding having been filed in the Court of Common Pleas of Mercer County, Pennsylvania, on the 30th day of October, 1944. There being a diversity of citizenship between the parties, the defendant removed said cause to the United States District Court for the Western District of Pennsylvania, and although a proceeding was filed to remand to the Common Pleas Court of Mercer County, another member of this Court refused said request and ruled that jurisdiction existed. This member of the Court believes that said action was proper and, as a result thereof, proceeded to enter into a full hearing of all the facts pertaining to the issues joined in the pleadings.

In this case it appears that the claimant, Steve Popovitch, is a widower who is now past 78 years of age. He is illiterate, being unable to read or write in any language, although he is able to speak and understand the Rumanian, Hungarian, and English languages in an intelligent manner. He had been engaged in business as a retail grocer and from time to time would buy cattle and stock, although during the later years of his life he found it necessary to secure help since his activities were somewhat limited.

The defendant, Mary P. Kasperlik, is a daughter of the plaintiff. She is 39 years of age, is able to read and write the English language fluently and is of marked intelligence.

Some twenty-five (25) years prior to the occurrence of the grievance now complained of, Steve Popovitch, the plaintiff, and his deceased wife, Mary Popovitch, became vested in fee simple to the real estate involved in this proceeding and maintained a home for themselves and their four children. As the children matured in age, for personal and variable reasons, they established homes for themselves but, at one time or another, one of said children continued to reside with the parents when the circumstances in the family so required.

At the time of the marriage of the defendant, Mary P. Kasperlik, she was a member of the family household, which was during the latter part of April, 1928. She and her husband resided at various places until 1934 when the defendant and her husband again established their residence with her parents. This relationship continued until a short time subsequent to the death of Mary Popovitch, wife of the plaintiff and mother of the defendant, which death occurred on or about the 9th day of November, 1941. During this period of time the defendant rendered services at the place of business conducted by the plaintiff, was paid in connection therewith and, in addition thereto, enjoyed privileges of the home. For some period of time prior to September 18, 1941, Mary Popovitch, wife of the plaintiff and mother of the defendant, became ill and was confined to her bed. At this time the defendant gave what attention was necessary to aid and assist her mother, and continued to render this service until the time of her death on November 9, 1941. After Mary Popovitch became ill, a discussion was held between the members of the family as to the support and maintenance of the plaintiff and his wife during the remainder of their lives, and as to the disposition to be made of the real estate which is involved herein. The plaintiff knew professionally an attorney by the name of Jarrett, and someone in the family a short time prior to September 18, 1941, requested Attorney Jarrett to come to the home. The plaintiff advised Jarrett as to his wishes, but due to limitations which existed on Jarrett's time, he recommended Attorney Armstrong. Within a few days Attorney Armstrong consulted with the plaintiff and defendant in the presence of each other.

As a result of this conference, Attorney Armstrong prepared a deed at his office and returned to the home of the plaintiff on September 18, 1941, at which time the instrument was executed.

Under the terms and provisions of said deed, the plaintiff and his wife, who was ill and bedfast, conveyed said real estate to the defendant, subject, however, to a life estate in favor of the plaintiff and his wife, for and during the term of each of their lives together with the right to the rents, issues and profits of and from said property as long as they or either of them shall live.

There does not appear to be any conflict as to the circumstances in connection with the signing of the instrument, the plaintiff having signed by an "X" mark in the presence of the defendant and Attorney Armstrong, and the plaintiff's wife, Mary Popovitch, having signed the instrument in the presence of the defendant, Attorney Armstrong and a customer who was in the store during this period of time; the plaintiff was not present when his wife placed her "X" mark on the instrument.

There is a conflict as to whether or not a notary public came to the home of the plaintiff and his wife to acknowledge the instrument in behalf of Mary Popovitch, or as to whether or not the plaintiff, Steve Popovitch, went to the office of the notary public to acknowledge the instrument.

The plaintiff contends that he intended to execute a will, that he had so advised the defendant and explained to the attorney his intention in this respect. The plaintiff asserts that due to the actions of his daughter and his attorney, the trust which he had reposed in them had been betrayed and, as a result of the existing fraud, the conveyance should be set aside and declared void.

The defendant contends that the plaintiff and her mother were fully aware and understood the nature of the transaction involved, and it was their wish and desire that the property be conveyed to the defendant, subject to a life estate in favor of her mother and father.

Subsequent to the execution of said deed and during the month of September, 1941, the exact date of which is not known, the plaintiff again consulted Attorney Armstrong and, as a result thereof, a supplemental agreement was executed by the parties. It was set forth therein that the defendant, Mary P. Kasperlik, was to have the right to occupy said premises with the plaintiff and his wife, if she so desired, together with her husband; that the taxes on said property, the necessary repairs, insurance charges and like charges were to be paid by Mary P. Kasperlik. It also provided that part of the rental for the premises was to be paid to Mary P. Kasperlik and part to the plaintiff. Furthermore Mary P. Kasperlik agreed to provide the necessary care and maintenance for the plaintiff and his wife during their lifetime.

After the death of Mary Popovitch on November 9, 1941, the plaintiff went to make his home with the defendant and her husband at Youngstown, Ohio. The plaintiff resided with the defendant and her husband for a period of three days, and he returned to Sharon, Pennsylvania, where the real estate in question is situate, to reside with a son. After the return to Sharon and the establishment of his residence with a son, the plaintiff contends that he first realized that he had signed a deed rather than a will.

Due to Attorney Armstrong having represented both the plaintiff and the defendant in the former matters of business which have been referred to, he elected to withdraw from the consideration of the differences which existed and, as a result thereof, the plaintiff secured the services of other legal counsel.

Through the guidance of his new legal counsel, Attorney Marks, an agreement was executed on the 5th day of June, 1942, between the plaintiff and the defendant, whereby it was intended and believed that the differences between the parties were settled and adjusted. It was agreed, inter alia, that the agreement which was executed in September, 1941, which was subsequent to the execution of the deed, but the exact date of which is not recalled by any person, should be cancelled and declared null and void. It was set forth that the full provisions of the deed were to be reinstated. The plaintiff was to have all

the income, issues and profits from said real estate for and during the term of his life, and was to be responsible for the upkeep and repairs of said premises, and make payment of the taxes and insurance. The other provisions of the agreement are not pertinent as far as the real estate transaction is concerned, but had to do generally with the payment of moneys by the defendant to the plaintiff, and in consideration of which together with the reinstatement of the provisions of the deed executed on September 18, 1941, a full and complete settlement and satisfaction of the claims of the plaintiff and defendant were to be effected.

The attorneys who represented the plaintiff were called as witnesses by the defendant and testified in the trial of this proceeding. Attorney Armstrong stated, in substance, that the plaintiff was fully aware of the nature of the instrument which he executed on September 18, 1941, and that he had prepared the deed after a conversation had been previously had with the plaintiff in the presence of the defendant. Prior to the time that the deed was executed, he either read or explained the contents of the deed. That the plaintiff placed his mark on the deed in the presence of Attorney Armstrong after said attorney had written the name of the plaintiff on the deed. Attorney Armstrong personally took the deed to the bedside of Mary Popovitch, and she placed thereon her "X" mark in his presence. In other words, Attorney Armstrong testified that both the plaintiff and his wife were fully aware and informed as to the nature of the instrument which they were executing, that it was their desire and intention to vest the title to said real estate in their daughter or the defendant, and to reserve for themselves a life estate. Attorney Armstrong also stated that an agreement was prepared at the request of the plaintiff and defendant a short time after the deed. The exact date in September of 1941 was not recalled but he incorporated in this agreement what he was advised by the plaintiff and the defendant.

It would appear that Attorney Armstrong was acting as attorney or in a confidential capacity for both, the plaintiff and the defendant, during the discussions about the deed and agreement due to the fact that each of them considered the matters with him prior to the time that the instruments were drawn.

One of the most settled rules of law which confronts courts is—that confidential communications between an attorney and client are to remain inviolate, and it is only where a client waives this privilege that an attorney is permitted to testify as to any facts or circumstances which came to his attention or knowledge while acting in a confidential relationship. Alexander v. Queen, Appellant, 253 Pa. 195, 203, 97 A. 1063.

However, where an attorney at law is the legal advisor of both parties to a transaction, and in the preparation of the papers, at the instance of both, receives communications from each in the presence of the other, such communications are not privileged from disclosure between the parties. Doll, Exr., Appellant, v. Loesel et al., 288 Pa. 527, 533, 136 A. 796.

Furthermore when the question of the integrity of a reputable member of the bar arises, the attorney should be entitled to explain the circumstances, since for him to keep silent would justify inferences being drawn that some act or deed was committed on his part that was not legal or in accordance with the direction of his client. Thomas v. Herring, Appellant, 244 Pa. 550, 91 A. 500.

The agreement executed on the 5th day of June, 1942, purported to adjust all differences existing between the plaintiff and the defendant. Although Attorney Marks prepared the agreement as counsel for the plaintiff, he was called as a witness by the defendant. No objection was made by the plaintiff or his counsel, or was the question of privileged communication raised, and in addition thereto plaintiff's counsel cross-examined Attorney Marks. Under the doctrine of privilege, if it had been exercised, Attorney Marks would not have been permitted to testify. Since the question of privilege was not exercised, the testimony of Attorney Marks is considered by the Court in the adjudication of the issues joined herein.

Attorney Marks testified that he had numerous consultations with plaintiff and de-

fendant's counsel. As a result thereof, the agreement of June 5, 1942 was prepared and that Attorney Marks, who could speak and understand Hungarian fluently, explained to the plaintiff in detail and with exactness in English or Hungarian the provisions of this agreement. It was the desire of the plaintiff to compromise his differences with the defendant, and the plaintiff was fully aware, understood and realized the terms and provisions of said agreement. Also that Attorney Marks had specifically and purposely set forth that the plaintiff and the defendant understood and agreed to the terms of said agreement in order that no question would arise subsequent thereto.

There is no question in the mind of the Court but what the relationship existing between the plaintiff and the defendant was of a confidential nature, and due to the severe illness of the wife of the plaintiff, he was reposing absolute faith, reliance and trust in his daughter. I further believe, from personal observation of the plaintiff during the trial of this proceeding, that the plaintiff understands the English language. He was able to answer the questions propounded to him with sufficient intelligence to be responsive, and little or no difficulty was experienced by him at any time during the course of his direct or cross-examination. Although he could be termed illiterate, as far as his ability to read or write English, Hungarian or the Rumanian languages, I believe that his intelligence was such that he could understand English as generally used in common parlance. I have also considered the fact that for a number of years he was engaged in business and, as a result thereof, he had the occasion and opportunity to deal generally with the English speaking people.

█ █ The first problem before the Court is, therefore, the orientation of the facts in this case into the law applicable in federal court. Federal jurisdiction is invoked solely on account of diversity of citizenship of the party litigants; there is no independent federal question involved before the Court in any of the claims. As a result thereof, the substantive law to be applied is the law of the Commonwealth of Pennsylvania, and the Court must, therefore, determine, by all of the available decisions which might exist, what rules of law have been accepted and established in the Commonwealth of Pennsylvania since it is the duty of the federal court to ascribe to the Acts of Assembly laws and decisions as made by the highest courts in this Commonwealth. Madden v. Kentucky, 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590, 125 A.L.R. 1383; Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Mitchell v. Ottinger, 3 Cir., 105 F.2d 334; Guaranty Trust Co. v. York, 326 U.S. 99, 65 S. Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231; Klaxon Co. v. Stentor Electric Mfg. Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477.

█ Where the relationship existing between the contracting parties appears to be of such a character as to render it certain that they do not deal on equal terms, but that on the one side from overmastering influence or, on the other side, from weakness, dependence, or trust justifiably reposed, unfair advantage in a transaction is rendered probable, it is incumbent on the party in whom such confidence is reposed to show affirmatively that no deception was used, and that all was fair, open, voluntary and well understood. Oko v. Krzyzanowski, Appellant, 150 Pa.Super. 205, 27 A.2d 414; Smith v. Cleveland et ux., appellants, 152 Pa.Super. 306, 312, 32 A.2d 38.

█ The burden, therefore, rests on the defendant to establish that no questionable circumstances existed in connection with the execution of the deed by the plaintiff and his deceased wife to the defendant. Also to show that the transaction was fair, open, voluntary and well understood, and that no fraud was imposed on the plaintiff.

█ In other words, the court must find that the witnesses called by the defendant are credible, the facts to which they testify are distinctly remembered, the details thereof related in exactness and in due order, and that their testimony is so clear, direct, weighty and convincing as to enable an impartial mind to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. To be clear, precise and indubitable, the evidence need not be uncontradicted, provided it carries a clear conviction of its truth. Broida, to Use, v. Trav-

elers Ins. Co., Appellant, 316 Pa. 444, 175 A. 492.

It, therefore, is the responsibility of the Court, sitting as chancellor, to decide whether or not fraud, lack of understanding or undue influence exists in this case and if the plaintiff knew, was aware of or fully understood the nature of the transaction in which he engaged. Hendricks, Appellant, et al. v. Bertolet et al., 342 Pa. 228, 20 A.2d 292.

Since a confidential relationship existed between the plaintiff and defendant, it is not necessary that actual fraud should appear in order for the conveyance to be set aside. It is sufficient, if it be proved, that the plaintiff did not understand or was he fully aware of the nature of the transaction in which he was concerned. That it was not his free and intelligent act, or it was not fully explained to him and he did not understand, or it was not done with a thorough knowledge of its consequences. Matthaei v. Pownall, 235 Pa. 460, 84 A. 444.

Under the provisions of the Act of May 28, 1913, P.L. 358, § 1, 12 Purdon's Pennsylvania Statutes Annotated, § 1222, it is provided that in order to justify the overthrow of a written instrument, the complaining party is required to prove his case or establish the facts about which he complains by the testimony of two witnesses, or of one witness sustained by corroborating circumstances equivalent to the testimony of another witness.

The two-witness rule, in order to set aside a legal instrument, does not require that every detail of one witness's testimony must be verified by the direct evidence of another, but only that a litigant's material or controlling allegations must be sustained by either one witness or equivalent corroborating circumstances. Morrish v. Morrish, 262 Pa. 192, 105 A. 83.

However, where a conveyance is made to one occupying a confidential relation, it is not necessary to establish actual fraud as a ground for a reconveyance. Where an illiterate and aged person conveys real estate, signed by a mark, to a person who occupies a confidential and trustworthy relationship, the grantee of the deed will be compelled to reconvey the premises unless there is full and satisfactory proof that the deed was the free and intelligent act of the grantor, fully explained and done with a thorough knowledge of the act and all its consequences; and this is so though no actual fraud is shown. Corrigan, Executrix, v. Conway, Appellant, 269 Pa. 373, 112 A. 466.

The notary public whose name appears on the deed testified that Steve Popovitch came to her office, which was near or adjoining to the office of Attorney Armstrong, and acknowledged the deed which had been previously given to her by said attorney. That the notary explained the nature of the instrument to Mr. Popovitch and told him what it was, and asked him if he had signed the deed; and with his answers being in the affirmative, the deed was acknowledged in the regular way. The notary further explained that she went to the Popovitch home and followed the same procedure with Mrs. Popovitch who was in her room, sitting in a chair near her bed, and after said visit, returned to her office and placed her seal on the instrument.

It might be said that an irregularity in the actions of the notary public exists due to the fact that the acknowledgment was taken as of the date which Attorney Armstrong had the scrivener set forth in the acknowledgment. The only evidence in contradiction of the notary public was that offered by Mr. Popovitch alone as to his own acknowledgment. As to the acknowledgment of Mary Popovitch, corroboration exists that she did visit the home where Mrs. Popovitch was confined to her room, for the purpose of taking the acknowledgment. I believe that the notary public did take the acknowledgments of the plaintiff and his wife to said instrument. Furthermore the plaintiff has not established by the measure of proof required that such irregularity exists in the acknowledgment as would justify the Court in setting the acknowledgment aside.

Where a person claims that the acknowledgment to a deed was not made before the notary public who certifies to this fact, the burden rests upon the party complaining to overcome the presumption of regularity. An acknowledgment of a

deed can only be impeached for fraud, and the evidence of fraud must be clear and convincing. If the proofs are doubtful and unsatisfactory, the writing will be held to express correctly the intention of the parties. The acknowledgment of a deed or another instrument is of too much solemnity to be brushed away by loose and inconclusive evidence. Hamling et ux. v. Ætna Life Ins. Co. of Hartford, Conn., et al., 8 Cir., 34 F.2d 112; Howland v. Blake, 97 U.S. 624, 626, 24 L.Ed. 1027; Young v. Duvall, 109 U.S. 573, 577, 3 S.Ct. 414, 27 L.Ed. 1036.

■ A certificate of an officer having authority to take acknowledgments cannot be overthrown by showing that his duty was irregularly performed. The notary is one of the persons designated by law to certify to the due execution of deeds and other instruments affecting the title to real estate, and the official certificate of the notary, in regular form, is in the absence of fraud, conclusive in favor of those who in good faith rely upon him. Any other rule would work incalculable mischief. It would open wide the door to fraud and perjury, and make recorded acknowledgments a snare to a person dealing with land on the faith and credit of the public records. Hamling v. Ætna Life Ins. Co., 8 Cir., 34 F.2d 112, 114; Young v. Duvall, 109 U.S. 573, 577, 3 S.Ct. 414, 27 L.Ed. 1036; Hitz v. Jenks, 123 U.S. 297, 305, 8 S.Ct. 143, 31 L.Ed. 156; Coxe v. Kriebel, 323 Pa. 157, 164, 185 A. 770, 106 A.L.R. 102.

■ Generally speaking, courts should be slow in allowing the integrity of written contracts to be attacked, but when such contracts are procured through fraud they lose their sacred character and if the proof be clear, precise and indubitable, they should be set aside. Oxweld Acetylene Co., Appellant, v. Johnson, 72 Pa.Super. 404.

■ Where the relationship between the parties is one of confidence and trust, such as aged parents and children, the party in whom the trust or confidence is placed is held to the strictest responsibility and accountability. The burden is upon said person to show that a transaction between himself and the individual, through whom he derives benefits, was fair and conscientious and beyond reach of suspicion. The rule is founded upon principles of public policy and is irrespective of any admixture of deceit, imposition, overreaching, or other causes of fraud. There must be full and clear proof that the transaction was a free and an intelligent act of the party, fully explained to him, and performed with a thorough understanding of the transaction and of its consequences. Darlington's Appeal, 147 Pa. 624, 23 A. 1046, 30 Am.St.Rep. 776; Bieranowski et al. v. Bieranowski et al., Appellant, 345 Pa. 447, 448, 29 A.2d 11.

■ Want of consideration for a conveyance does not prove fraud, but it is a circumstance to be considered upon that question in connection with other evidence, as is also glaring improvidence. Although a grantor is presumed to know the contents of a deed executed by him, even when written in a language which he is unable to read or understand, such circumstances may be considered as lending probability to evidence of actual fraud and deception. A certificate of acknowledgment to a deed is prima facie evidence of the due execution of the deed, including knowledge of its contents, but is subject to rebuttal where fraud is alleged, especially where there are no intervening rights. Pusic v. Salak et al., Appellants, 261 Pa. 512, 104 A. 751.

■ There is nothing in the relation of parent and child to preclude one from accepting a benefit from the other in the shape of a gift, or of a contract upon more advantageous terms than would have been granted to a stranger, and the fact that such a gift has been conferred, or contract made, will not, in itself, warrant an inference that it has been procured by undue influence. When gained by kindness and affection, it will not be regarded as undue if no imposition or fraud is practiced. Northern Trust Co., Executor, v. Huber, Appellant, 274 Pa. 329, 118 A. 217; Mackall v. Mackall, 135 U.S. 167, 10 S.Ct. 705, 34 L. Ed. 84.

The defendant during the period that she resided with her mother and father did lend valuable assistance in and about the home, and in the conducting of the grocery

store business. Although she was paid a fair amount for the services which were performed in the store, it would appear that due to the interest and concern which she had in regard to the mother and father, she did many things and performed many services for their welfare which indicate a love, affection and respect of the child to its parents. I believe that the parents recognized this fact and were furthermore aware that provisions had been made for the other children, in one way or the other, and that it was their desire to have the defendant-daughter become the absolute owner of this real estate after their death. However, it was the intention of the parents to make positive that ample provisions existed for their care and maintenance, and for all needs which might arise in the station of life to which they were accustomed for and during the remainder of each of their lives. I also believe that it was the intention of the defendant, Mary Popovitch Kasperlik, to make such provisions as might be found necessary to provide all needs and requirements of her mother and father in the station of life to which they were accustomed for and during the term of each of their lives.

I am quite frank in saying that if it had not been for the testimony of Attorneys Armstrong and Marks, who are reputable members of the Bar in Mercer County, I would have been inclined to declare the deed to have been secured under circumstances which were questionable. I make this comment for the reason that the defendant left the impression with me that after she had been given such an interest in this real estate so that she would eventually become the absolute owner, after the death of her parents, she would only do those things which the law would hold her legally responsible to perform.

However, Attorney Armstrong was clear and definite in relating the facts and circumstances having to do with the execution of the deed, and the subsequent agreement in September, 1941. Furthermore Attorney Marks carried the same definiteness and thoroughness in explaining the execution of the second agreement on June 5, 1942, which ratified or re-instated the original terms and provisions of the deed of September 18, 1941.

I can reach no other conclusion but that Mr. Popovitch was fully aware and understood the nature of the instruments which he signed, which were the deed, the agreement of September, 1941, subsequent to the deed, and the agreement of June 5, 1942. It was his intention and that of his wife to vest title to this property in the defendant, subject to the life estate for himself and his wife together with the right to all the income, issues, rents and profits from said real estate for him and his wife, or the survivor, during their lives. I also believe that it was the intention of all parties concerned that if the income from said real estate was not sufficient to provide either or both of the parents with the necessities or needs which might be required, that the defendant would make such provisions.

Where a parent conveys real estate to a child without consideration, other than love and affection, reserving a life estate together with the issues and profits therefrom, the law will not favor setting aside said conveyance at the whim, desire or change in mind or feeling of the parent to the child.

It is necessary before said conveyance can be set aside to find that:

(1) The grantor did not understand the transaction; or

(2) He was not fully aware of the nature of the transaction; or

(3) The transaction was not his free and intelligent act; or

(4) It was not explained to him; or

(5) It was not done with a thorough knowledge of its consequences.

In view of the statements of the attorneys who represented Mr. Popovitch, I have no sound basis to find any of the requirements above set forth to have been established or proved by the plaintiff.

As I commented before, I observed Mr. Popovitch with considerable care during the time that he was on the witness stand. With very few exceptions he understood the questions asked in the English language

and he made answers that were responsive and intelligent. It, therefore, appears to me that he was fully aware of what he was doing, the instruments which he executed carried his intention and desire, and that no undue influence or fraud was, therefore, practiced upon him or his wife.

This lawsuit has caused considerable ill-feeling and deep seated wounds between the daughter and her father, and the other members of this once happy family. It should be remembered there is more in life than material things or financial gain. If the defendant would keep this predominant in her mind, she would be able to contribute materially in many ways to the happiness, well-being and welfare of her aged father during the few remaining years of his life.

### Findings of Fact.

1. The plaintiff is a resident of Sharon, Mercer County, Pennsylvania.

2. The defendant is a resident of Youngstown, Mahoning County, Ohio.

3. The plaintiff and defendant are father and daughter respectively.

4. This action was originally brought in the Common Pleas Court of Mercer County, Pennsylvania, but said cause was properly removed to the Federal Court for the Western District of Pennsylvania by the defendant.

5. The plaintiff is a widower, seventy-eight years of age, and the defendant is a married woman, thirty-nine years of age.

6. On April 30, 1928, the date of defendant's marriage, the plaintiff had a mortgage in the amount of $2500 on his property, the subject of the present action.

7. The plaintiff does not read or write any language; he is illiterate, but he can understand and speak Rumanian, Hungarian or English.

8. On September 18, 1941, a deed was executed in which plaintiff and defendant were grantor and grantee respectively, reserving a life estate to the plaintiff.

9. That in addition to reserving a life estate together with the rents, issues, incomes and profits from said real estate, it was the intention of the parties that the defendant would provide for the plaintiff the necessities and needs which he might require for and during the term of his life if the income from the property was not sufficient to maintain him in the station of life to which he had been accustomed.

10. The plaintiff, Steve Popovitch, signed the deed by affixing his mark and was fully aware of the nature and extent of said transaction at that time.

11. The mother of the defendant, now deceased, signed the deed by affixing her mark and was fully aware of the nature and extent of said transaction at that time.

12. The plaintiff re-affirmed and ratified the execution of said deed by the execution of the agreement on the 5th day of June, 1942. It was fully understood by him and the defendant that under the terms and provisions of the agreement of June 5, 1942, it was the intention of the parties that the defendant would provide the plaintiff with the necessities and needs which he might require for and during the term of the plaintiff's life if the incomes, issues, rents and profits therefrom were not sufficient to maintain him in the station of life to which he had been accustomed.

13. After the death of defendant's mother, i.e., plaintiff's wife, defendant sold out the stock of the business and removed to Youngstown, Ohio, taking plaintiff with her.

14. Plaintiff remained in Youngstown only three days and returned to Sharon, in which latter city he has since resided.

15. The defendant has not contributed any money to the maintenance and support of the plaintiff since the date of the deed, to wit, September 18, 1941, other than permitting the plaintiff to have all the rents, issues, incomes and profits from said real estate.

16. That although it is the duty and obligation of the defendant to provide the plaintiff with any additional income which he might require in order to maintain him in the station of life to which he had been accustomed if the rents, issues, income and profits from the real estate are not sufficient so to do, there is no evidence that the plaintiff has been unable to maintain himself in the manner to which he had been accustomed.

17. An agreement was executed on an unknown date in September, 1941, giving the defendant the right to receive certain rents from a portion of the plaintiff's property, to wit, all of the property except the shoe shop and barbershop.

18. On the 5th day of June, 1942, an agreement was entered into by the plaintiff and defendant wherein the defendant paid to the plaintiff the sum of $500, which the plaintiff had loaned to the defendant, and whereby the defendant returned to the plaintiff certain rent money and other money realized by the defendant from the sale of plaintiff's personal property.

19. The defendant paid no actual money consideration or gave any value for the interest which was received in said real estate. However, the defendant is obligated to provide the plaintiff with such additional income as the plaintiff might need or require for and during the term of the remainder of his life if the rents, issues, profits and income are not sufficient so to do.

20. The plaintiff has paid the taxes and insurance on the property.

21. The plaintiff paid his attorneys for drafting the various instruments.

22. The value of the property at the time of the execution of the deed on September 18, 1941, was seven to eight thousand dollars.

23. No fraud existed at the time of the execution of the deed and the terms and provisions thereof were fully understood.

24. The plaintiff ratified and confirmed the terms and provisions of said deed by the supplemental agreement executed on the 5th day of June, 1942, the terms and provisions thereof having been explained and, as a result thereof, understood by the plaintiff.

25. The defendant has established that no fraud, advantage or undue influence was exercised over the plaintiff at the time of the execution of the deed, modified agreement and supplemental agreement.

### Conclusions of Law.

1. The United States District Court for the Western District of Pennsylvania has jurisdiction of said actions by reason of the diversity of the citizenship of the parties, plaintiff and defendant.

2. There existed a confidential relation between the plaintiff and defendant because of the trust and confidence reposed by the plaintiff in the defendant.

3. The defendant has established that the execution of the deed, the modified agreement and supplemental agreement were each the intelligent and understood act of the plaintiff, fair, conscientious and beyond the reach of suspicion and no deception was used.

4. The plaintiff has failed to prove fraud in the transactions, the exercise of undue influence by the defendant, or facts sufficient to establish that the execution of said instruments was not the free, willing and understood act of the plaintiff.

5. The plaintiff is not entitled to the cancellation of the deed.