### INSURANCE COMPANY *v.* NELSON.

A suit was brought to foreclose a mortgage made by husband and wife of land, a part of which belonged to him and a part to her. Her answer sets up that he obtained her signature by physical violence, and that he and the officer who took her acknowledgment, both of whom died before her answer was filed, represented to her that the mortgage did not cover her land. *Held*, that her testimony is not sufficient to impeach the mortgage.

APPEAL from the Circuit Court of the United States for the District of Kansas.

The facts are stated in the opinion of the court.

*Mr. D. G. Hooker* for the appellant.
*Mr. John J. Ingalls* for the appellee.

MR. JUSTICE WOODS delivered the opinion of the court.

The Northwestern Mutual Life Insurance Company, appellant, filed its bill in the court below for the foreclosure of a mortgage on certain lots in the city of Wyandotte, and a tract of land containing sixty acres situate outside that city, all in the county of Wyandotte, in the State of Kansas, alleged to have been executed by William Cook and Jane

Cook, his wife, dated Dec. 10, 1874, to secure his bond for $5,000.

The city lots were his property, but the tract of sixty acres was the separate property of his wife.

She filed her answer, in which she admitted the execution of the bond, but denied the execution of the mortgage as set forth in the bill of complaint. Her account of the execution of the mortgage, as given in her answer, was as follows : —

" This defendant alleges that, on or about the time mentioned in the plaintiff's bill as the time when said bond and mortgage therein set out were executed, the said William Cook, her husband, requested her (this defendant) to sign a mortgage to the plaintiff as mortgagee, to secure a loan of money to be loaned by the plaintiff to him, said William Cook, her husband, and informed her that such mortgage was upon certain lots of his, in Wyandotte City, and upon this defendant asking him, her said husband, to let her read the said mortgage, he, her said husband, refused to permit this defendant to read the same. This defendant then asked whether said mortgage covered her land outside the city, and was told by her said husband that it did not; but this defendant refused to sign the same, whereupon her said husband took hold of this defendant, and by physical force seated this defendant in a chair at the table and put a pen in her hand, and placing his hands on this defendant's shoulder and arm, commanded and compelled her to write her name, which she did and not otherwise, and not of her own free will and accord, but that she was compelled to sign said mortgage by force and threats of her said husband, and that the same was signed under duress, by actual force, physical coercion, and the use of violence and compulsion of her said husband, and through and by such duress, force, physical coercion, and not otherwise, she was made to sign such mortgage, and this defendant avers and alleges that such mortgage is not her deed.

" And this defendant further answering, says that afterwards, when Alison Crockett, the officer certifying to the acknowledgment of said mortgage, came into the room where this defendant was, to take such acknowledgment, said Crockett informed defendant that said mortgage was upon some city lots belonging

to her husband and did not cover her land. That defendant believed said declaration to be true; that Crockett did not read said mortgage to defendant, or otherwise explain the contents thereof, except as herein stated; that defendant did not read said mortgage, because she believed the declaration of said Crockett to be true, and feared to offend her husband by refusing to acknowledge the signature to said mortgage as hers."

Her answer further alleged as follows:—

"The said Alison Crockett was the agent of the plaintiff herein, in loaning money to her said husband, William Cook, and taking said mortgage in security therefor; and when he took said acknowledgment and made the representations aforesaid, that this defendant's land was not included in said mortgage, he was acting as the agent of the plaintiff herein, and that he then had full knowledge and well knew that the land above described (the sixty-acre tract) was the property of this defendant and was included in said mortgage."

To this answer the general replication was filed.

William Cook having died before the commencement of the suit, George P. Nelson, administrator of his estate, and other defendants, answered; but their answers are immaterial, as no questions are involved in this appeal except such as arise upon the answer of Jane Cook.

Upon the issue, made by the pleadings, proofs were taken, and upon final hearing the court made a decree foreclosing the mortgage upon the city lots, but as to the sixty-acre tract the court found for defendant, Jane Cook, and declared that the mortgage was not a lien thereon, and omitted said tract from the decree of sale.

The insurance company, being dissatisfied with the decree of the court below, has brought the case here on appeal.

The defence relied on is, that the signature of Jane Cook to the mortgage was obtained by means of the false representations of her husband and by compulsion through the application of physical force, and that her acknowledgment was obtained by means of the false representations of her husband and the officer before whom she made it, in respect to the contents of the mortgage.

The defence rests mainly upon the answer, and upon the deposition of Mrs. Cook.

The only person present besides Mrs. Cook, when the mortgage was signed by her was her husband. There were only two persons present besides her when the acknowledgment of the mortgage was taken. These were her husband, and Alison Crockett, register of deeds for Wyandotte County, before whom the acknowledgment was made, both of whom are dead. She is, therefore, the only living witness of what transpired when the mortgage was signed and acknowledged.

She admitted her signature to the mortgage, but said it was obtained in the following manner: Cook, her husband, came in and asked her to sign the mortgage. He stated that it covered the town lots in Wyandotte. She declined to sign it. What then took place is thus stated by her: "He said if I did not sign that mortgage he would come off down town and go to drinking till he killed himself; these are just the words he said, and then from that he said he was going to compel me to sign it, and then as I say he forced me into the chair, he took me and set me in the chair and held me there, and took the pen and put it in my hand and guided my hand and wrote my name there."

In answer to the question, "How is it that your name is so well written on the mortgage?" she said, "After he got through he took the pen and straightened the places."

She further testified as follows : —

"After the mortgage was signed, Crockett came in. He asked me, 'Where is the paper, are you going to sign?' Mr. Cook spoke up and said, 'It is already signed.' He asked me then if I signed it. I did not say anything. Mr. Cook stood between me and Mr. Crockett; he as much as told me to keep my mouth shut by his motions. He looked me right in the face."

She further testified that Crockett did not explain to her the contents of the mortgage before taking her acknowledgment. He simply told her that the mortgage was nothing to injure her, that it was on property down on Minnesota Avenue.

The complainant introduced in evidence the original mortgage and also the original of a draft, which Mrs. Cook testified

bore her indorsement, and her original deposition in this case bearing her signature. The evidence of three experts in hand-writing was also introduced for complainant. They all testi-fied that her signature to the mortgage and deposition and her indorsement of the draft were written by the same person ; that the signature to the mortgage appeared to be in the same natural and voluntary hand as the other signatures, and that upon inspection through a glass showed no signs of having been touched up or altered.

The three original signatures were exhibited to the court. An inspection of them with the naked eye satisfies us that her statement that her signature to the mortgage was made in the manner described in her deposition cannot be true. It is as free and natural as her signature to her deposition or her indorsement of the draft. It bears no signs of constraint, as would inevitably have been the case if she had reluctantly held the pen and it had been guided by another hand and will. It bears no signs of any change or filling up or straightening. On this subject the inspection of the signatures leaves no doubt in our minds. Her narrative in regard to the manner in which her signature to the mortgage was made is contradicted by the signature itself, and a comparison of it with the others put in evidence. How, then, can we give credence to her tes-timony, touching the representations of her husband in relation to the contents of the mortgage and her account of the manner in which her acknowledgment was taken ?

When a deed or mortgage, regular in appearance, and bear-ing the genuine signature and duly certified acknowledgment of the grantor or mortgagor is attacked, the evidence to im-peach it should be clear and convincing.

In the case of *Howland* v. *Blake* (97 U. S. 624) this court said : " The burden rests upon the moving party of overcoming the strong presumption arising from the terms of a written instrument. If the proofs were doubtful and unsatisfactory, if there is a failure to overcome this presumption by testimony entirely plain and convincing beyond reasonable controversy, the writing will be held to express correctly the intention of the parties. A judgment of the court, a deliberate deed or writing, are of too much solemnity to be brushed away by

loose and inconclusive testimony." See also *Shelburne* v. *Inchiquin*, 1 Bro. Ch. 338, 341; *Henkle* v. *Royal Assurance Co.*, 1 Ves. Sen. 317 ; *The Marquis Townshend* v. *Stungroom*, 6 Ves. Jr. 328, 338 ; *Gillespie* v. *Moon*, 2 Johns. (N. Y.) Ch. 585 ; *Lyman* v. *United Insurance Co.*, id. 630 ; *Graves* v. *Boston Marine Insurance Co.*, 2 Cranch, 444.

The acknowledgment of a deed can only be impeached for fraud, and the evidence of fraud must be clear and convincing. *Russell* v. *Baptist Theological Union*, 73 Ill. 337.

In this case, the testimony of Mrs. Cook touching the manner in which her signature to the mortgage was obtained is so incredible, that her account of the way in which her acknowledgment was taken is entitled to little weight.

We have not thought it necessary to consider the question whether, under the statute of Kansas, the communications between her and her late husband, to which she testified, are admissible in evidence.

It is unnecessary to discuss the other evidence in this case. It is sufficient to say that it is entirely circumstantial, and its weight is decidedly against the defence set up.

We are of opinion that there was no evidence in the case sufficient to overcome the effect of the mortgage and the officer's certificate. The Circuit Court should, therefore, not have excepted the sixty-acre tract from its decree of foreclosure. For this error the decree must be reversed, and the cause remanded with directions to enter a decree for the complainant in conformity with this opinion; and it is

*So ordered.*