A. GROTENKEMPER *v.* W. H. CARVER *et al.*

1. MARRIED WOMEN. *Privy examination. Amended certificate.* An amended certificate of probate of the privy examination of a married woman, when properly made under the statute, will have all the force of an original probate, and as between the parties, and volunteers under them, will relate back to the date of the privy examination.

2. SAME. *Same.* Such a certificate is not successfully impeached by the testimony of the husband and wife, that the husband remained in the clerk's office while the privy examination was taken, the husband stating that he does not remember whether he was out of hearing or not, and the wife being silent on this point, and saying that she signed the deed and acknowledged it.

3. MORTGAGE. *Husband and wife. Husband not agent of. Mortgagee. When.* The payment of a substantial consideration at the time

Grotenkemper *v.* Carver.

a mortgage by husband and wife is made, will constitute the mortgagee a purchaser for value, although a part of the consideration be a pre-existing debt, and, nothing else appearing, the husband cannot be held to be the agent of the mortgagee in procuring the wife to join in the deed.

4. CHANCERY PLEADINGS AND PRACTICE. *Evidence that deed was fraudulently signed.* Where, upon bill filed to foreclose a mortgage made by a husband and wife, the wife in her answer and cross-bill only avers generally that she was fraudulently induced to sign the deed, and did so under constraint and duress, without any statement of facts showing fraud, constraint or duress, the unsupported testimony of the husband and wife that she was induced to sign the deed by his threat to kill himself if she did not, would not be sufficient to vitiate the deed.

5. MARRIED WOMEN. *Separate estate. Power to mortgage.* A married woman, to whom land has been conveyed "to her sole separate use, and to be held by her free from the debts, liabilities and contracts of her present husband, or any future husband she may have," may mortgage such land for the security of her husband's debts.

6. SAME. *Amended certificate of probate. Relates to date of deed.* A person who takes a conveyance from a husband and wife of part of the wife's separate estate, in payment of a pre-existing debt, and with notice of a previous conveyance by them of the same property in mortgage by a deed, the certificate of privy examination of which is defective, but is afterwards amended under the statute, is a volunteer, and cannot resist the claim of the mortgagee.

---

FROM SHELBY.

---

Appeal from the Chancery Court at Memphis. D. H. POSTON, Sp. Ch.

CRAFT & COOPER for complainant

W. P. WILSON and WEATHERFORD & ESTES for defendants.

COOPER, J., delivered the opinion of the court.

On December 13, 1865, John A. Sims conveyed

the land in litigation, lying near Memphis, to Mary
A. Carver "to her sole and separate use, and to be
held by her free from the debts, liabilities and con-
tracts of her present husband, William H. Carver, or
any future husband she may have." On October 20,
1868, Carver and wife conveyed the land to Hamil-
ton J. Miller and William McRoberts, partners in
business under the name of Boyle, Miller & Co., in
mortgage to secure seven notes of the husband to the
firm, of even date, three of them for the sum of
$4166.66 each, at two years, and the other four for
$750 each, payable at six, twelve, eighteen and twenty-
four months respectively. The mortgagees were mer-
chants at Cincinnati, Ohio, and William H. Carver,
the husband, was doing business at Memphis, Tennes-
see. The consideration of the notes consisted of an
account for goods previously sold to Carver by Boyle,.
Miller & Co., including interest at the rate of ten
per cent per annum, amounting to $4713.30; of goods
sold and delivered at the time of the value of
$1496.89; of goods to be delivered after the execu-
tion of the mortgage to the value of $6289.81; and
$3.000 interst for two years on the debt at the rate
of twelve per cent per annum, the. last four notes
being for the interest.

The contract was made by the husband alone with
the mortgagees at Cincinnati, and the mortgage was
prepared at place by filling up the printed form of
such an instrument, having attached to it a printed
form for the probate of a deed of a husband and
wife, such as is required by the laws of the State of

Ohio. This form differs in some essential particulars. from the form prescribed by our statutes for a similar instrument. The deed was brought to Memphis. by Carver, and there executed and acknowledged by them before the clerk of the county court, who filled up the printed form of certificate attached to the deed. The instrument was then registered, and sent by mail to the mortgagees. And the mortgagees afterwards, before the maturity of the notes, assigned the notes to the complainant, Grotenkemper, in payment of a debt due by them to him.

On July 19, 1872, the original bill in this cause was filed to foreclose the mortgage. Carver and wife demurred to the bill, assigning as causes of demurrer that the clerk's certificate of the acknowledgment by them of the execution of the deed, failed to show that the clerk was personally acquainted with the bargainors, or that the wife was privily examined. The chancellor sustained the demurrer and dismissed the bill as. to the wife. On July 2, 1875, the suit still pending, the complainant filed an amended and supplemental bill against Carver and wife, based upon an amended probate, and re-registration of the mortgage deed, the amendment having been made on the 6th of June, 1874. The amendment was held to be good, and the bill sustained by this court: *Grotenkemper* v. *Carver*, 4 Lea, 375.

After the decree sustaining the demurrer to the original bill, and before the amendment of the clerk's certificate, Carver and wife conveyed five acres of the land to Wilson & Beard, the consideration of the

conveyance being "the fees for services rendered by Wilson & Beard, as solicitors for Mrs. Carver, in the cause." This deed was only proved and registered at the time. Beard afterwards sold and conveyed his interest in the lot to Wilson. And the latter was permitted to become a party defendant to this suit after the filing of the amended and supplemental bill.

In her answer to the bill, Mary A. Carver admits that she, togather with her husband, signed the mortgage deed, and with him admitted the fact to some one. "She avers that all that was done at the time was to ask if she signed it, and if she knew its contents." Both in her answer and deposition she says her husband was present, with other persons. She adds in her answer: "That it (the mortgage), was not executed by her freely, voluntarily and understandingly, and without compulsion and constraint by her, but that all that was done was under compulsion and constraint, and that through fear and duress she went with her husband." She says, in another part of her answer, that her husband acted as the agent of the mortgagees in procuring the mortgage, and "that she was fraudulently induced to sign the same." The answer contains no statement of facts tending to show compulsion, constraint or duress, or fraud, by the husband, or any other person, to induce her to execute the deed. By agreement of parties, her answers was treated as a cross-bill for relief upon the matters therein contained considered as denied by answer not under oath. The chancellor, on final hearing, dismissed the bill, and complainant appealed.

We concur with the chancellor in the conclusion that the amended certificate of the clerk, sustained as it is by the testimony of the clerk, has not been successfully impeached. The existence of the printed form of probate on the mortgage, which does contain. the recital of a private examination of the wife, though not in the words of our statute, goes far to explain how the defective certificate happened to be made, and does not tend to show that the actual probate was taken otherwise than in the usual way. The clerk is positive that he took the privy examination in the usual way, the husband retiring from the room. And the amended certficate, without his testimony, would have all the weight, when legally made, of the original probate. There is testimony that the clerk was sued on his official bond for damages for the defective probate about twelve days after he had made the amended certificate, which suit was dismissed in 1880. The proof is made by the clerk himself, who adds that he does not think any threat was made to sue before he made the correction. The only other testimony relied on in defense is that of the husband and wife. They both say that the husband remained in the clerk's office while the acknowledgment of the wife was taken. The husband adds that he does not remember whether he was out of hearing or not, but the fact that he does not contradict the clerk as to the manner in which the wife's privy examination was taken, raises a strong presumption that he was. The wife, in her deposition, says nothing on this point. The evidence falls far short of that

which is required to impeach the probate: *Shields* v. *Netherland,* 5 Lea, 193; *Northwestern Mut. Ins. Co.* v. *Nelson,* 103 U. S., 544.

It is also clear, as held by the chancellor, that the husband cannot be considered as the agent of the mortgagees in procuring his wife's concurrence in the deed. Much the largest part of the consideration secured by the mortgage was new, and passed at the time and on the faith of the security. The rule in such cases is that the payment of a substantial consideration at the time will make the mortgagee a purchaser for value: *Gordon* v. *English,* 3 Lea, 634. There is not the slightest ground for implicating the mortgagees in any wrongful conduct on the part of the husband: *Shields* v. *Netherland,* 5 Lea, 199. The answer, as we have seen, does state generally that what was done by the wife was under compulsion and constraint, and through fear and duress, and that she was fraudulently induced to sign the deed. But these are mere conclusions of law, vague generalities, that cannot avail without a statement of facts to sustain them. They neither implicate the husband, nor any one else. When fraud is relied on, the facts upon which the charge is grounded must be stated and proved: *Raht* v. *Mining Co.,* 5 Lea, 18; *Fort* v. *Orndorff,* 7 Heis., 167. The only evidence offered to sustain even the allegations, is the testimony of the husband and wife, that she was induced to sign the deed by the threat of the husband to kill himself, if she did not. The chancellor excluded the testimony as falling within the exception of confidential commu-

nications between husband and wife, which are not allowed to be introduced as evidence on grounds of public policy, and by the act of 1879, ch. 200. It is unnecessary to decide the point, for the court concurs in the opinion that the unsupported testimony of the husband and wife would, under the circumstances, be insufficient to sustain the defense.

The land in controversy, it will be remembered, was conveyed to Mary A. Carver "to her sole and separate use, and to be held by her free from the debts, liabilities and contracts of her present husband, William H. Carver, or any future husband she may have." His Honor, the chancellor, was of opinion that these words operated as a limitation of the power of the wife over the separate estate, and prevented her from charging the property for her husband's debts. The reason he gives is that, since the act of 1849–50, Code, 2481, the husband could not charge the estate by any act of his; that these words of the deed create the separate estate, and that the court cannot presume that the grantor was ignorant of the statute, and used the language without a purpose. We are unable to concur in this view. The act of 1849 was intended to protect the husband's interest in the wife's general property, not her separate estate, from the husband's debts, or from sale by him, unless she joined in the conveyance. Her separate estate needed no such protection, for it could not be charged without her consent either for or by him. The words "to her sole and separate use" were sufficient to create a separate estate, and the residue of the sentence, by

being an established legal usage, was intended to make
assurance doubly sure, by expressing the grantor's ob-
ject in a different form.    The words are those usually,
although unnecessarily, used in such cases:    Malloy v.
Clapp, 2 Lea, 586;    Wood v. Polk, 12 Heis., 220.
They simply fix the tenure of her estate, and do not
affect the power of disposition which belongs by law
to that estate.    It is not denied that the wife may
charge her separate estate with the payment of her
husband's debts, if there is no limitation in the power
of disposition:    Parker v. Parker, 4 Lea, 392.

Wilson & Beard took their conveyance of five
acres of the land in controversy in payment of a pre-
existing debt for professional services, and are, under
our decisions, mere volunteers:    Jarman v. Farley, 7
Lea, 141.    They had notice, moreover, that the com-
plainants claimed under their mortgage, and the equity
of that claim, if eventually established, would prevail
over the sebsequent conveyance:    Code, sec. 2074.    As
between the parties to the mortgage, the privy exam-
ination was good, and the amended certificate related
back to the date of the acknowledgment:    Code, sec.
2072.    Besides, the original bill in this case continued
in court as to Mary A. Carver, after the demurrer
was sustained, certainly for the purpose of appeal, for
the complainant could not have appealed from the
ruling of the chancellor as of right until the whole
case had been disposed of by a final decree; and,
perhaps, also for the purpose of amendment.    In this
view, these parties brought subject to the result of
the lis pendens.

The chancellor's decree must be reversed, and a decree rendered here in favor of the complainants, subjecting the land to the satisfaction of their demand. The husband has been discharged in bankruptcy, and there will be no personal decree for the debt. The costs will be paid by the complainants, to be reimbursed out of the proceeds of sale.

Judge TURNEY dissents from so much of this opinion as holds that the taking of the privy examination of the wife has not been successfully impeached, and that the complainants title is superior to that of the defendant, Wilson.