# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 09-2430

MARY BETH PONSETTI, Trustee of the
Ronald J. Lehn Declaration of Trust
dated July 25, 2002,

*Plaintiff-Appellant,*

*v.*

GE PENSION PLAN, GE SAVINGS AND
SECURITY PROGRAM, and GENERAL
ELECTRIC COMPANY,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 07-1180—**Michael M. Mihm**, *Judge.*

ARGUED APRIL 16, 2010—DECIDED JULY 30, 2010

Before EASTERBROOK, *Chief Judge*, FLAUM, *Circuit Judge*,
and HIBBLER, *District Judge.*[1]

---

[1] The Honorable William J. Hibbler, District Judge for the
Northern District of Illinois, sitting by designation.

FLAUM, *Circuit Judge.* This is an appeal from a district court order granting summary judgment in favor of the defendant benefit plans and company. Plaintiff-appellant alleged that defendants breached their fiduciary duty and their obligation to provide a "full and fair" review of a request for claims when they refused to disburse cash to a trust fund established by a former employee of General Electric. Both parties agree that by default, under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq., money should go to the surviving spouse of the decedent. They also agree that decedent did not execute a valid transfer of entitlements to the plaintiff Trust. The plans required that any such change involve a form that bore the signature of the beneficiary, the signature of the spouse consenting to a transfer of benefits, and the signature of a notary or plan representative witnessing the prior two. At one point, decedent brought in the appropriate form to work with his signature on it and another he claimed belonged to his wife. A notary public signed it, but later swore in an affidavit that she did not actually witness the two principal signatures and that her certification was invalid. The Trustee acknowledges all of this, but nonetheless attempts to mount a collateral attack on the plans' decision to disburse money to the then-living spouse (the one beneficiary recognized by law). We affirm.

## I. Background

Defendants-appellees GE Pension Plan and GE Savings and Security Program (collectively, "the Plan") are benefit

plans organized under ERISA. Defendant General Electric Company ("GE") operated a facility in Ottawa, Illinois. The Plan designated GE as its administrator.

Decedent, Ronald J. Lehn ("Lehn") was employed by GE at the Ottawa facility. Lehn had two children from a prior marriage, Samuel Lehn ("Samuel") and Sarah Lehn ("Sarah"). He married Lisa Lehn on June 6, 1991, and remained married to her until his death. On June 3, 1991, he designated Lisa Lehn as his primary beneficiary under the Plan. By 2002, Lehn's retirement accounts with the Plan exceeded a million dollars. After consulting with an attorney, Lehn signed a Declaration of Trust on July 25, 2002 ("the Trust"), to implement his estate plan. The Trust provided that following payment of expenses and taxes, the Trustee was directed to pay 25% of the principal and undistributed income to Lehn's spouse, Lisa Lehn; 25% of the principal and undistributed income to Samuel; 25% of the principal and undistributed income to Sarah; and 25% of the principal and undistributed income to Lehn's siblings and parents.

Sometime prior to March 2005, Lehn contacted employees at GE's Ottawa facility to obtain a Beneficiary Designation ("BD") form. On March 27, 2005,[2] he presented

---

[2] Appellant's original complaint states: "On March 7, 2005, Lisa Lehn and the decedent, Ronald Lehn, executed the attached Exhibit B." Exhibit B is the GE Benefits Plans Beneficiary Designation form, which is dated "27 March 2005" next to Lehn's signature. This date comports with the one mentioned by

(continued...)

to GE the signed BD form designating the Trustee as the primary beneficiary and recipient of all of his benefits under the Plan. The form bore the following language:

> STOP—If you are married your spouse is automatically your only primary beneficiary under the GE Pension and Savings & Security Plans. If you wish to name someone other than your spouse as primary beneficiary for these plans you must do the following: 1) complete and sign this designation form; 2) obtain your spouse's signature on this designation form; AND 3) complete and obtain the required signatures on the Consent Form which accompanies this designation form.

Likewise, the Plan specifically provided that if a participant is married at the time of his death, his spouse will be the automatic beneficiary of any death benefits payable under the Plan unless the spouse consents to the designation of a different beneficiary in accordance with specific procedures. Among other requirements, the spouse's consent must acknowledge the effect of the decision to waive benefits, and the spouse's signature

---

[2] (...continued)
Joyce Anderson, GE Benefits Counsel, in her December 5, 2006 letter. The district court referred to the document by the erroneous date introduced in the complaint, but we will rely on the actual marking for our shorthand. Curiously, elsewhere in their briefs, appellants describe the document as the "March 27, 2005 Designation of Beneficiary Form." The form is stamped "APR 11 2005."

must be "witnessed by a Plan representative or notary public." These criteria parallel the ERISA rule that a spouse may waive his or her right to death benefits under a retirement plan only if the spouse's consent acknowledges the effect of the waiver "and is witnessed by a plan representative or notary public." 29 U.S.C. § 1055(c)(2)(A)(iii).

After Lehn attempted to submit the March 27, 2005 BD form, a GE employee informed him that he had to provide evidence of spousal consent in order to designate his trust as a beneficiary. On April 6, 2005, Lehn presented Karen Riveland, an administrative assistant employed at the GE plant who was licensed as an Illinois notary public, with a spousal consent form bearing a signature purporting to belong to Lisa Lehn. The consent form itself included a statement that the spouse's consent must be witnessed by the notary. Riveland, whose usual duties included handling travel arrangements and performing clerical tasks, signed the form. On April 11, 2005, Lehn submitted this consent form to GE along with the BD form directing the Plan to pay death benefits to appellant Trust.

Lehn died on November 8, 2005. On November 11, 2005, Susan VanderVoort, GE Benefits Specialist, sent a letter to Lisa Lehn, advising her that GE was aware of Lehn's death and that the records indicated that the Ronald J. Lehn Declaration of Trust was the named beneficiary. On December 15, 2005, Delia Garcia, acting as Lisa Lehn's guardian and representative, submitted a claim for benefits. Garcia stated that "Lisa Lehn did not validly consent

to the payment of any GE benefits to the Ronald J. Lehn Declaration of Trust." Garcia followed up with a letter dated January 4, 2006 asserting that Lisa Lehn was not mentally competent on the date of her purported consent.

On March 22, 2006, an Illinois court adjudicated Lisa Lehn disabled and officially appointed Garcia as her guardian. Garcia informed VanderVoort of this development in a letter dated April 26, 2006. On August 28, 2006, an attorney for Lisa Lehn submitted to VanderVoort affidavits from two of Lisa Lehn's physicians stating that Lisa's "cognitive function was severely impaired" from advanced multiple sclerosis and that Lisa was "totally incapable of making financial decisions and understanding financial matters" in March and April 2005. Garcia also forwarded the Plan a letter Ronald Lehn sent to his health insurance company on September 27, 2005, in which he characterized his wife as suffering from dementia and a "senile degenerative brain" disorder since at least June 2004. Said letter described Lisa as "confused," "disoriented," "combative," and "profoundly demented." Finally, Garcia assembled evidence showing that Lisa had been concerned about her ability to cover her escalating medical expenses at the time of her alleged consent and would not have waived her right to benefits.

During the summer of 2006, the Plan informed plaintiff-appellant about Garcia's claim that Lisa Lehn could not have competently waived her rights to the decedent's benefits. Raymond Nolasco, attorney for the Trust, called Riveland and asked if she had notarized the Consent

Form for Lehn. Riveland indicated that she had and may have suggested that Lisa Lehn was present when she notarized the document. Approximately a month later, Nolasco called Riveland and asked her to sign an affidavit stating that Lisa Lehn was present when Riveland notarized the Consent Form. Riveland responded that she could not sign the affidavit because she had never met Lisa Lehn and that Lisa Lehn was not present when the Consent Form was notarized. Nolasco then advised VanderVoort and Joyce Anderson, GE's in-house Benefits Counsel, to speak to Riveland about the notarization. Anderson contacted Riveland, who admitted that Lisa Lehn was not present when she notarized the Consent Form and swore to as much in an affidavit. VanderVoort subsequently received a copy of the letter written by Lehn on September 27, 2005 that sought medical coverage for his wife's inpatient care and described Lisa Lehn as "profoundly demented."

On October 19, 2006, the Trust filed a complaint against GE, the GE Pension Plan, and the Estate of Lisa Lehn in Illinois Circuit Court. The Trust held off serving process on defendants to facilitate negotiation. The complaint alleged a breach of fiduciary duty and failure to pay benefits under ERISA as well as several state-law violations.

On December 5, 2006, Anderson sent a letter to the Trust and Garcia advising them that Lisa Lehn's claim for benefits was granted while the Trust's claim was denied. The letter stated:

> Karen Riveland notarized [Lisa Lehn's] signature. Karen Riveland is a GE employee in addition to being

a notary. I spoke with Karen Riveland along with Sue Vandervoort [sic], the GE Survivor Support team member who is handling the Lehn matter. Karen told us that she notarized the form at Ronald Lehn's request at work. Lisa Lehn did not appear before the notary. Without a proper witness, the spousal consent is invalid.

As the surviving spouse of Ronald J. Lehn, Lisa Lehn is the primary beneficiary of the Pension and S&Sp benefits.

Anderson attached Riveland's affidavit.

Following receipt of the letter, one of the attorneys for appellants, Melissa Sims, requested additional documentation from the Plan. Appellees fulfilled this demand and sent over the Summary Plan Description ("SPD"), Lehn's entire claim file, and Karen Riveland's job description. The Plan had provided the Trust with a copy of the disputed consent form on a prior occasion (appellants attached it to their original state court complaint).

On March 20, 2007, Sims emailed Anderson the following message:

After careful review, it has been determined that the intended plan beneficiary designation to the Ronald Lehn Trust was not legally effectuated based upon the representations made by your employee, Karen Riveland.

In that connection [sic], we believe the law is such that the benefits according to the plan must be paid over to the surviving spouse, Lisa Lehn. Our com-

plaint will not be dismissed as we will be adding
a separate count against your client for breach of
fiduciary duty in effectuating the intended plan
beneficiary to the trust.

You should discuss with Attorney John Sandberg the
manner in which the funds must be paid over to his
client, who is currently disabled.

In June 2007, the Trust served process on defen-
dants-appellees, who removed the action to federal court.

On October 29, 2007, the $1,118,283.39 in Lehn's GE
Savings & Security Program account was paid to the Estate
of Lisa Lehn. On December 1, 2007, the GE Pension Plan
paid out the sums of $115,743.27 and $11,772.74 to Lisa's
Estate as well.

On July 31, 2008, Judge Mihm granted GE's motion to
dismiss plaintiff-appellant's breach of fiduciary duty
claim on the grounds that the complaint did not identify
any of the named defendants as fiduciaries who breached
their duties under ERISA.[3] The district court also

---

[3] Two typographical errors in the decision below threaten to
muddle the issues on appeal, but go away with a glance at
subsequent developments in the case. The district court order
ruling on the motion to dismiss began by discussing plain-
tiff's claim for payment of benefits under 29 U.S.C. § 502(a)(1)(B)
in a segment titled "Section 502(A)(1)(b) [sic]." It then re-
viewed our decision in *Butler v. Encyclopedia Brittanica*, 41 F.3d
285 (7th Cir. 1994) (finding "appealing" the argument that a
consent form was invalid because the spouse claimed that he

(continued...)

[3] (...continued)

did not sign it in a suit under both §§ 502(a)(1)(B) and 502(a)(3)). After remarking that the Trust's posture in the current case resembles that discussed in *Butler*, the district court went on to state that "the resolution of the § 502(a)(3) claim must be resolved on a more complete factual record following the limited discovery authorized in this case. Accordingly, this portion of the GE Defendants' Motion to Dismiss must be denied at this time." The court then moved on to segment B of the order, entitled "Fiduciary Duty Claim," where it granted the motion to dismiss "[p]laintiff's claim for breach of fiduciary duty under 29 U.S.C. § 1132(a)(1)(B)" because the Trust conceded that "the Complaint does not identify any GE Defendant as a 'fiduciary' who breached its duties under ERISA." The district court then moved on to appellant's state law claims.

Given the decision's context, nature of each cause of action, and the subsequent course of litigation, we read the July 31, 2008 order to have denied the motion to dismiss with respect to the § 502(a)(1)(B) claim for payment of benefits and granted it with respect to the § 502(a)(3) claim for equitable relief. This interpretation follows the form of the Trustee's November 30, 2007 Amended Complaint, which reads, in relevant part: "The Trustee brings this action under Section 502 (a)(1)(B)of ERISA as a claim for the benefits the Trust is entitled to receive under the GE Benefits Program. 29 U.S.C. § 1132 (a)(1)(B). Alternatively, she brings this action under Section 502 (a)(3)(B) of ERISA seeking equitable relief for the GE Plan's breach of its fiduciary duty of care. 29 U.S.C. § 1132 (a)(3)(B)." The reading we adopt also validates the posture of the district court's subsequent ruling on defendants' motion for summary judgment. In any event, in its Jurisdictional Statement and other

(continued...)

dismissed the Trust's state law claim under the Illinois Notary Public Act. Finally, Judge Mihm dismissed all claims against Riveland and the Estate of Lisa Lehn, noting that, "[w]ith all due respect, Plaintiff's explanation for why the Estate and Garcia were named parties makes no sense . . . ." In the same order, the district court denied the Trust's motion for a jury trial, which is unavailable under ERISA.

This left only the ERISA § 502(a)(1)(B) claim, which entitles a person to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Appellant alleged that the Plan's decision to deny benefits to the Trust and award them to Lisa Lehn amounted to an arbitrary and capricious action by an administrator prohibited by this provision. On May 4, 2009, the district court granted the Plan's motion for summary judgment on that issue. It found that documentary evidence of Lisa Lehn's longstanding illness and incapacity at the time she allegedly signed the form, the Riveland affidavit, and

---

[3] (...continued)

parts of the brief, the Trust acknowledges that its § 502(a)(3) claim is no longer viable and that it is appealing only the judgment on its action under 29 U.S.C. § 1132(a)(1). Pl. Brief, at 41 ("On GE's Rule 12(b)(6) motion to dismiss, plaintiff agreed the breach of fiduciary duty claim under Section 502(a)(3) of ERISA was eliminated by payment of the benefits to the surviving spouse.").

the admission by Plaintiff's counsel that the Consent Form had not been legally effectuated, is clear and convincing evidence that Riveland's notarization on the Consent Form was invalid. The Court must conclude that the Plan's decision reaching the same conclusion was not arbitrary or capricious, but rather was imminently reasonable, as was its determination that the benefits must be paid to Lisa Lehn under the terms of the Plan documents and ERISA.

The court continued:

Although the Plaintiff erroneously casts her argument in terms of a breach of fiduciary duty claim, she then falls back to the argument that the Plan Administrator acted arbitrarily in processing the claim for benefits under § 502(a)(1)(B) of ERISA. Assuming arguendo that such a claim can be asserted against a plan administrator under § 502(a)(1)(B), Plaintiff's argument would still fail. . . . While perhaps not a textbook example of how competing claims for benefits should be resolved, the Court finds that the transactions and exchanges that took place between GE and the beneficiaries substantially complied with ERISA's requirement that specific reasons for a denial of benefits be communicated to a claimant and that the claimant be afforded a full and fair review by the administrator. . . . Thus, even assuming that Plaintiff could bring a claim for breach of fiduciary duty in processing benefits pursuant to § 502(a)(1)(B), the Court concludes that such claim would fail. GE's procedures substantially complied with the require-

ments of ERISA under Hackett, and any deficiencies did not rise to the level of an arbitrary or capricious claims processing procedure.

The Trust appeals. Its arguments, though poorly developed, center around the proposition that the Plan did not fulfill its obligation to provide a full and fair review of a claim for benefits. For example, appellant states, "[The Anderson letter from Dec. 5, 2006] did not state the basis in the Plan the Plan provision [sic] or the statute on the form of a Spouse's Consent. That was the basis of the decision, which full and fair review requires be stated" (citing 29 U.S.C. § 1055(c)(2)(A)(i)). Section 1055(c) sets out the requirements for a valid transfer of benefits from the default beneficiary spouse to a third person. It is the section referenced by the Plan in clauses demanding express spousal consent and notarization. Section 1055(c)(2)(A) explains that a spouse's election to waive benefits is valid only if:

> (i) the spouse of the participant consents in writing to such election,

> (ii) such election designates a beneficiary (or a form of benefits) which may not be changed without spousal consent (or the consent of the spouse expressly permits designations by the participant without any requirement of further consent by the spouse), and

> (iii) the spouse's consent acknowledges the effect of such election and is witnessed by a plan representative or a notary public . . . .

Appellant next takes issue with the standard of review the district court applied to the Plan's decision, arguing that the district court should have reexamined the validity of the spousal consent form de novo as a question of law. The Trustee then attempts to append arguments that notary certifications should be interpreted through a lens of state common law and as testamentary acts to their already muddled brief. Section 1291 of Title 28 only grants us jurisdiction over final decisions of the district courts, here the May 4, 2009, summary judgment order. Accordingly, the Trust is restricted to a narrow appellate posture on the issue of whether the district court erred in finding that the Plan complied with ERISA demands of a full and fair review of benefit claims.

## II.  Discussion

A.  Standard of Review

We review a grant of summary judgment de novo. *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 809 (7th Cir. 2006). The party moving for summary judgment bears the burden of establishing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

In litigation over the payment of benefits under ERISA, our default stance is to examine an administrator's determination de novo. *Firestone Tire & Rubber Co. v. Bruch*, 489

U.S. 101, 115 (1989); *Raybourne v. Cigna Life Ins. Co. of N.Y.*, 576 F.3d 444, 448 (7th Cir. 2009). If, however, the plan explicitly confers discretionary authority to an administrator to determine whether benefits are due, we check only that the administrator did not abuse such discretion. *Firestone*, 489 U.S. at 115. Here, the parties do not dispute that the Plan vested absolute discretion in the administrator, so we will not reverse unless the action was arbitrary and capricious. *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 688 (7th Cir. 1992). That is, we will uphold the administrator's decision so long as "(1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem." *Williams v. Aetna Life Ins. Co.*, 509 F.3d 317, 321-22 (7th Cir. 2007).

Appellant nonetheless claims that we should review the Plan's decision to distribute the funds to Lisa Lehn de novo for compliance with the requirements of ERISA § 502(a)(1)(B). To support this proposition, the Trustee cites a set of cases that grappled with the boundaries of discretion conferred to plan administrators in one narrow area: so-called "deemed denials" of benefits. In these situations, a set of regulations authorizes individuals to file suit in federal court to dispute a plan's failure to respond to a claim or an appeal within a time limit proscribed by regulation, generally ranging from 45 to 120 days. *See* 29 C.F.R. § 2560.503-1(f) (2009). An older version of the regulation implemented this extension

of adjudicatory rights by deeming claims met with silence denied, which in turn made them eligible for review by a district court pursuant to ERISA § 502, 29 U.S.C. § 1132.[4] *See generally Jacobson v. SLM Corp. Welfare Benefit Plan*, No. 1:08-cv-0267-DFH-DML, 2009 U.S. Dist. LEXIS 78597, at *11-14 (S.D. Ind. Sept. 1, 2009). Courts of Appeals then had to determine whether *Firestone*, which requires deferential review of discretionary action by plan administrators, also compelled similarly hands-off scrutiny of inaction by said administrators. *See, e.g., Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98 (2d Cir. 2005); *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625 (10th Cir. 2003). The circuits reached conclusions with somewhat varied contours, but their precise parameters are not at issue here: the Trustee contests the validity of an overt act by the Plan, not an omission. Binding current precedent from this Court demands that upon review, we determine

---

[4] The updated variant of the regulation equates an administrator's failure to follow the regulatory timeline with respect to a claim to the claimant's exhaustion of administrative remedies, instead of an outright denial. The maneuver still entitles the claimant to file suit in federal court under 29 U.S.C. § 1132(a). *See* 29 C.F.R. § 2560.503-1(*l*) (2009) ("In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.").

whether this act fell into the spectrum of discretion allotted to the administrator, not whether it was a conclusion we would reach by looking at the problem anew. *Cf. Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 329 (7th Cir. 2000) ("The issue is whether language in plan documents to the effect that benefits shall be paid when the plan administrator upon proof (or satisfactory proof) determines that the applicant is entitled to them confers upon the administrator a power of discretionary judgment, so that a court can set it aside only if it was 'arbitrary and capricious,' that is, unreasonable, and not merely incorrect, which is the question for the court when review is plenary ('de novo').").

Thus, appellant's citations to cases like *Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan*, 349 F.3d 1098 (9th Cir. 2003), and *Nichols* are at best misguided. Both decisions concerned the review appropriate for deemed denials and reached the conclusion that such automatic decisions must be scrutinized more closely than reasoned interpretations of plan requirements. *Cf. Sanford v. Harvard Indus.*, 262 F.3d 590, 597 (6th Cir. 2001). Prior to embarking on the non-deferential review, the Ninth Circuit expressly distinguished instances where a beneficiary attempts to pinpoint some procedural flaw in a discretionary plan action done in good faith from ultra vires steps that cannot receive deference:

> We have held previously that procedural violations can affect the merits determination concerning whether an abuse of discretion has taken place. *Blau v. Del Monte Corp.*, 748 F.2d 1348 (9th Cir. 1984), ruled that "ordinarily, a claimant who suffers because of a

fiduciary's failure to comply with ERISA's proce-
dural requirements is entitled to no substantive rem-
edy," but that if procedural violations result in "sub-
stantive harm," then "a court must consider [such
violations] in determining whether the decision to
deny benefits in a particular case was *arbitrary and
capricious*." *Blau*, 748 F.2d at 1353-54.

. . .

For present purposes, however, we leave the more
general issue open and decide only that where the
plan itself provides that a particular procedural viola-
tion results in an automatic decision rather than one
calling for the exercise of the administrator's discre-
tion, that provision is as enforceable as the provision
giving the administrator discretionary authority
under other circumstances. Deference to an exercise
of discretion requires discretion actually to have
been exercised.

349 F.3d at 1105-06 (emphasis added). The procedural
violation at issue in *Jebian* was a plan's failure to abide
by its own contractual procedures for denying claims by
default. The Trustee here has not alleged a similar
breach and wouldn't fare any better even if it did
because our own precedent mandates that we review
the statutory adequacy of procedures employed by a
discretionary plan for abuse of discretion. *Hackett v.
Xerox Corp.*, 315 F.3d 771, 774-75 (7th Cir. 2003).

Other cases cited by appellant are similarly inapposite.
*Krohn v. Huron Memorial Hospital*, 173 F.3d 542 (6th Cir.
1999), concerns the scope of a fiduciary's statutory duty

to disclose information in response to a beneficiary's questions. *Gaither v. Aetna Life Insurance Co.*, 394 F.3d 792 (10th Cir. 2004), deals with the extent of a plan's contractual and statutory obligation to investigate the nature of a claimaint's disability and ends up applying arbitrary and capricious review, though in part due to appellant's decision not to ask for closer scrutiny. The Tenth Circuit there asserted "the narrow principle that fiduciaries cannot shut their eyes to readily available information when the evidence in the record suggests that the information might confirm the beneficiary's theory of entitlement and when they have little or no evidence in the record to refute that theory." *Id.* at 807. In this sense, the most salient aspect of *Gaither* works directly against the Trustee's efforts to impugn on procedural grounds the validity of a decision by appellees to which the Trustee herself acceded.

We therefore inquire only whether the Plan's decision to pay out benefits to Lisa Lehn was reasonable, mindful that "[r]eview under the deferential arbitrary and capricious standard is not a rubber stamp and deference need not be abject. Even under the deferential review we will not uphold a termination when there is an absence of reasoning in the record to support it." *Hackett*, 315 F.3d at 774-75; *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001).

## B. Failure to Pay Benefits

Sections 503 and 505 of ERISA require that "specific reasons for denial be communicated to the claimant

and that the claimant be afforded an opportunity for 'full and fair review' by the administrator." *Halpin*, 962 F.2d at 688-89; *see also* 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1 (2009). Substantial compliance is sufficient to meet this standard. *Halpin*, 962 F.2d at 690. The inquiry into whether termination procedures substantially complied with the demands of 29 U.S.C. § 1133 is fact-intensive and "guided by the question of whether the beneficiary was provided with a statement of reasons that allows a clear and precise understanding of the grounds for the administrator's position sufficient to permit effective review." *Hackett*, 315 F.3d at 775.

As explained by the district court and apparent even from appellant's statement of facts, the Plan's decision to deny the Trust's claim was reasonable and properly communicated. The Trust does not base its contrary position on the contention that Lisa Lehn actually consented to the transfer of benefits, and with good reason—in the face of overwhelming evidence, its counsel admitted the opposite in her March 20, 2007, email. Instead, appellant seeks to deny the Plan the right to use this same evidence to distribute benefits pursuant to federal law.

The Trust cannot succeed in this endeavor. The record before us shows without ambiguity that appellees conducted a diligent, if unusual, investigation prior to reaching a conclusion that appellants acknowledge to be accurate. All available evidence in this case points to the fact that Riveland did not witness Lisa Lehn's signature and the Plan administrator did not act unreasonably when finding as much. The Plan then distributed much

of this evidence to appellants and summarized the rest in substantively detailed correspondence that satisfies the requirements of 29 U.S.C. § 1133. In a case where plaintiffs-appellants filed a complaint long prior to any adverse determination and then used their counsel to engage in protracted negotiations under threat of moving forward with the action, the Plan duly accorded their position full and fair review.

The Trust argues that "Judge Mihm [improperly] left the decision on the effect of a notary's recantation of her certification to the discretion of the Plan Administrator. Here that confirmed a truly arbitrary decision because GE gave no consideration to the strong presumption of the validity of a notary certification." Appellant then proceeds to cite a variety of cases establishing the presumptive validity of testamentary documents and notary certifications. *See, e.g.*, *Colton v. Colton*, 127 U.S. 300, 309 (1888) (discussing rules of construction for wills). Most are from the nineteenth century. Appellants argue that together, these mean that the Plan was not entitled to disregard the spousal consent form just because a notary subsequently cast doubt on the validity of her certification.

This argument has little to do with the actual question before us. The Plan disregarded the spousal consent form not "just" on the basis of Riveland's negative affidavit, but also because of the voluminous evidence of Lisa Lehn's incapacity at the time she supposedly signed the document. Even the Trust does not claim that Lisa Lehn actually executed the waiver on March 27, 2005. Thus, the

totality of the circumstances in this case unambiguously undermines the validity of the consent form.

By contrast, the cases cited by appellant deal with situations where an individual attempts to dispute the validity of his or her own signature on the basis of a faulty notarization or an unreliable witness. For example, in *Butler v. Encyclopedia Brittanica*, 41 F.3d 285 (7th Cir. 1994), we held that a spouse who admitted signing an ERISA benefit waiver form could not himself later undo the effect of this signature by claiming that the form was not properly witnessed by a notary or plan representative. *Id.* at 293. Based on the unremarkable proposition that "a notary public's certificate of acknowledgment, regular on its face, carries a strong presumption of validity," we held that testimony from an obviously self-interested witness (the plaintiff) was not enough evidence to cast aside the waiver.[5] We explicitly

---

[5] The *Butler* opinion characterized this result as an absence of "clear and convincing evidence" that the notarization was faulty. 41 F.3d at 295. Appellant hangs much of its argument on this phrase and implores us to read the decision as establishing either an alternative level of review for administrative decisions dealing with notarized documents or a higher burden of proof for a Plan seeking to establish the validity of discretionary decisions implicating such documents. As we explained earlier, our precedent rejects the first request. The second proposition also goes nowhere because of this Court's strong interest, reinforced by instructions from the Supreme Court, in maintaining the uniform weight of federal civil

(continued...)

and repeatedly referenced the record to reach this conclusion. Accordingly, our comment that "[i]f a notary's certificate were vulnerable to attack every time an interested witness contradicted the certificate and the notary did not have a personal recollection of the event, 'it would shock the moral sense of the community, deny justice, and create chaos in land titles[]' and every other type of document requiring notarization," 41 F.3d at 295, does not mandate reversal in this case.

This conclusion is in line with the relevant older decisions of the Supreme Court. *See, e.g., Young v. Duvall*, 109 U.S. 573, 577 (1883) (requiring proof "of such a character as will clearly and fully show the certificate to be false or fraudulent" to contradict a certificate of acknowledgment to a conveyance of real estate); *Ins. Co. v. Nelson*, 103 U.S. 544 (1880) (finding that testimony by wife that husband physically forced her to sign a mortgage on her property was not enough to void a transfer of the land where all other witnesses to the transaction were dead and her signature looked normal). These decisions

---

[5] (...continued)
judgments. To implement this interest, we presume that a preponderance of the evidence is enough to prove any fact in a civil suit. *See Herman & Maclean v. Huddleston*, 459 U.S. 375, 391 (1983) (applying the "preponderance-of-the-evidence standard generally applicable in civil actions" to suits under § 17(a) of the 1933 Securities Act). We will not deviate from this position unless a statute demands otherwise. *See id.* at 388-89; *see also Grogan v. Garner*, 498 U.S. 279, 287-88 (1991).

retain authority in the wake of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), because they form the federal common law of contracts applied to ERISA plans and the federal common law of trusts that provides a theoretical foundation for the statute itself. *See Marrs v. Motorola, Inc.*, 577 F.3d 783, 787 (7th Cir. 2009); *Ruttenberg v. United States Life Ins. Co.*, 413 F.3d 652, 659 (7th Cir. 2005). *See generally Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 805-06 (7th Cir. 2009); *Eddy v. Colonial Life Ins. Co. of Am.*, 919 F.2d 747, 750 (D.C. Cir. 1990). In this sense, they support our finding that the Plan acted reasonably. For example, while the *Nelson* Court reached its result under the rubric of the "clear and convincing evidence" standard inapplicable here, it focused on the record. Cases like *Nelson* thus only serve to reinforce the obvious conclusion that appellee's determination that Lisa Lehn did not waive her right to the decedent's benefits was neither arbitrary nor capricious.

C. Breach of Fiduciary Duty

Appellant asserts that even if it is not entitled to receive any payment of benefits from the Plan, it may still sue them for breach of fiduciary duty in this § 502(a)(1)(B) action (the Trust does not appeal the dismissal of its plea for equitable remedies under §502(a)(3)). This is a novel theory. We have previously differentiated between suits under ERISA § 502(a)(1)(B), which we have characterized as essentially a contract remedy under the terms of the plan, *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 330 (7th Cir. 2000), from suits under ERISA

§ 510, actionable through ERISA § 502(a)(3). Section 510 prohibits interference with a person's opportunity to become eligible for plan benefits:

> Section 510, unlike Section 502(a)(1)(B), is not concerned with whether a defendant complied with the contractual terms of an employee benefit plan. Rather, the emphasis of a Section 510 action is to prevent persons and entities from taking actions which might cut off or interfere with a participant's ability to collect present or future benefits or which punish a participant for exercising his or her rights under an employee benefit plan. *See, e.g.*, 29 U.S.C. § 1140; *Felton v. Unisource Corp.*, 940 F.2d 503, 512 (9th Cir. 1991). The difference between enforcing the terms of a plan and assuring that parties do not somehow impinge on current or future rights under employee benefit plans may seem subtle at first glance, but upon a close examination it becomes clear that the distinction is great. *In order to enforce the terms of a plan under Section 502, the participant must first qualify for the benefits provided in that plan*. *See* 29 U.S.C. § 1132. Rather than concerning itself with these qualifications, one of the actions which Section 510 makes unlawful is the interference with a participant's ability to meet these qualifications in the first instance.

*Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1133-34 (7th Cir. 1992) (emphasis added).

The live portion of appellant's suit alleges only a violation of § 502(a)(1)(B). This statutory provision is designed to defend a person's contractual entitlements to benefits.

For the reasons stated in Part B, the Trustee has no rights under the Plan—nothing that belongs to appellant falls under the protective umbrella of § 502(a)(1)(B). Such a conclusion restricts the remedy for any remaining fiduciary violation to equitable relief. *Varity Corp. v. Howe*, 516 U.S. 489, 508-15 (1996); *see also Strom v. Goldman, Sachs & Co.*, 202 F.3d 138 (2d Cir. 1999) (holding that where a plaintiff was not entitled to receive any benefits under the terms of the plan, a breach of fiduciary duty by the plan administrator in violation of § 404(a)(1)(B) did not establish alternate grounds for recovery under § 502(a)(1)(B)). With its § 502(a)(3) cause of action gone, appellant is no longer eligible to seek equitable relief. The Trust's sole remaining claim under § 502(a)(1)(B) could only "recover benefits due . . . under the terms of the plan." Because any monetary award in the suit would amount to compensatory damages for breach of contract and the Plan's conduct makes such an award inappropriate, we affirm the district court's judgment without examining whether the Plan's conduct complied with ERISA require-ments for a fiduciary.[6] *See also Sharp Elecs. Corp. v. Metro.*

---

[6] Though we do not reach the merits of the fiduciary claim in this appeal, we note that the Plan's conduct would likely pass muster under any applicable standard. By invoking the § 502(a)(3) remedy, appellant seeks to recharacterize its argu-ment that the Plan acted arbitrarily and capriciously when it identified Lisa Lehn as the sole valid beneficiary of decedent's entitlement into a claim that the Plan did not act with the "care, skill, prudence, and diligence" required by 29

(continued...)

*Life Ins. Co.*, 578 F.3d 505, 513 (7th Cir. 2009) (reiterating the rule that a claim for a breach of fiduciary duty under ERISA following a permissible adverse determination must seek to recover losses to the Plan, not a contractual counterparty).

---

6 (...continued)
U.S.C. § 1104 in reaching this same decision. Both allegations arise from the same record, which, as we explained, contains no sign of faulty decisionmaking by the administrator. Since the Trustee has almost no evidence to back her position, even a rather drastic change in legal standard applicable to the case (from that of reasonableness to the "'rigid level of conduct' expected of fiduciaries," *Varity*, 516 U.S. at 514-16 (citations omitted)) would yield the same result—no matter how strong a magnifying glass a court is willing to use, a zero will remain a zero. Moreover, ERISA § 404 by its terms imposes a fiduciary duty on the Plan only with respect to Plan participants and beneficiaries, not third parties whose financial interests may be indirectly implicated by a compensation decision. 29 U.S.C. §1104(a)(1) ("a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—. . . for the exclusive purpose of: . . . providing benefits to participants and their beneficiaries . . . ."). Appellant is one such third party and could not find redress even if she could squeeze her claim into the § 502(a)(1)(B) box. *See also Johnson v. Georgia-Pacific Corp.*, 19 F.3d 1184, 1188 (7th Cir. 1994) (stating that the ERISA definition of a "fiduciary" in 29 U.S.C. § 1002(21)(A) "does not make a person who is a fiduciary for one purpose a fiduciary for every purpose. A person 'is a fiduciary to the extent that' he performs one of the described duties; people may be fiduciaries when they do certain things but be entitled to act in their own interests when they do others.").

We recognize the strong need for uniformity in federal common law generally and ERISA interpretation in particular, *see Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 567 (7th Cir. 2002); *Phoenix Mut. Life Ins. Co. v. Adams*, 30 F.3d 554, 564 (4th Cir. 1994), and our conclusion here comports with the bulk of jurisprudence on the issue, as well as Supreme Court decisions like *Varity* that view the remedies available under 29 U.S.C. § 1132(a) as discrete, non-redundant, non-fungible causes of action. The Second Circuit has permitted a "hybrid" suit for a procedural violation of ERISA that led to an underpayment of benefits and that the plaintiff characterized as a breach of fiduciary duty to go forward under § 502(a)(1)(B), *Wilkins v. Mason Tenders Dist. Council Pension Fund*, 445 F.3d 572, 582 (2d Cir. 2006), but the posture of that case stands in stark contrast to the one before us today and poses questions that we reserve for a later date. The plaintiff in *Wilkins* was a union construction worker who claimed that the plan owed him a larger benefit than the one the plan had calculated. Wilkins premised this claim on the theory that over the span of 40 years, his various employers underreported his wages to avoid making the full contribution required for his contractually guaranteed union retirement benefits. Wilkins faulted the defendant pension fund too, for failing to adequately audit the employers, as well as for not disclosing an internal, written fund policy that required members to provide pay stubs showing a union wage as evidence that they were entitled to benefits for work not reported by employers ("the Pay Stub Policy").

Only the second allegation is potentially relevant here, because in form, it asserted a procedural violation of ERISA disclosure requirements for conditions that a participant must satisfy to be eligible for benefits. *See* 29 U.S.C. § 1022(b); 29 C.F.R. § 2520.102-3(l) (2009); 29 C.F.R. § 2520.102-3(j)(1) (2009). The district court characterized this theory as a one articulating a breach of fiduciary duty colorable under § 502(a)(3) and thus ineligible for anything other than equitable relief. The Second Circuit disagreed, contrasting *Strom v. Goldman, Sachs & Co.* in the process:

> The district court's starting premise is correct: suits may be brought under § 502(a)(3) only for "those categories of relief that were typically available in equity," *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993), and "classic compensatory . . . damages are never included within" these categories, *Gerosa*, 329 F.3d at 321. *See also Great-West*, 534 U.S. at 210-11. We believe, however, that Wilkins's claim may be understood not as a claim for equitable relief under § 502(a)(3), but as a claim to recover plan benefits under § 502(a)(1)(B). Accordingly, the limitations on the forms of relief available under § 502(a)(3) do not apply to his claim.
>
> . . .
>
> Wilkins, on the other hand, is, by hypothesis, entitled under the plan to the benefit he seeks: a pension calculated on the basis of all his covered employment. (What level of benefits he is due—if any—is, of course, an analytically distinct (and fact-inten-

sive) question that depends on the scale of the underreporting.) That he has also characterized the Fund's alleged failure to produce a valid SPD as a breach of its duties as a fiduciary in no way forecloses his access to relief under § 502(a)(1)(B). And, as decisions of this court have made clear, "if a summary plan 'is inadequate to inform an employee of his rights under the plan, ERISA empowers plan participants and beneficiaries to bring civil actions against plan fiduciaries for any damages that result from the failure to disclose' under 29 U.S.C. § 1132(a)(1)(B)." *Layaou*, 238 F.3d at 212; *see also Burke*, 336 F.3d at 114 (holding that, where the plaintiff was likely prejudiced by a defective SPD, she was entitled to recover under § 502(a)(1)(B) the benefits she was due under the plan as construed in light of the SPD).

445 F.3d at 582-83 (some citations omitted). To the extent that the above language suggests that ERISA permits some co-mingling between theories of recovery, it also distinguishes environments where such fraternizing may occur from the present appeal. Crucially, under the logic of *Wilkins* and *Strom* (where the Second Circuit denied recovery for a potential breach of fiduciary duty under the auspices of § 502(a)(1)(B) contractual remedy to a plaintiff lacking a contractual connection to the plan), a procedural misstep by a plan administrator can only lead to money damages when the plaintiff victim of said misstep has an indisputable entitlement to *some* benefits. Here, the Trust has no right to receive anything from the appellees. Any injury appellant suffered from a poten-

tial shortfall in care by a plan with which it maintained no legal relationship is not cognizable in a suit under § 502(a)(1)(B). *See Wilkins*, 445 F.3d at 585; *cf. Burke v. Kodak Ret. Income Plan*, 336 F.3d 103, 113 (2d Cir. 2003) ("Cognizant of ERISA's distribution of benefits, we require, for a showing of prejudice, that a plan participant or beneficiary was *likely* to have been harmed as a result of a deficient SPD.").

Appellants also make the argument that the district court erred in granting summary judgment in favor of defendants-appellees on the fiduciary duty issue because the Plan "did not address plaintiff's claim for the breach of the fiduciary duty of care in claims processing." In doing so, the Trust argues, the Plan failed to meet its burden of identifying grounds on which summary judgment may be granted. As appellees point out, however, the Amended Complaint distinguished between a claim of a breach of fiduciary duty under ERISA § 502(a)(3)(B) and a claim for benefits under § 502(a)(1)(B). The latter survived a motion to dismiss; the former did not. The Trust acknowledges that "the breach of fiduciary duty claim under § 502(a)(3) of ERISA was eliminated by payment of the benefits to the surviving spouse." As demonstrated above, § 502(a)(1)(B) does not amount to parallel grounds for relief on fiduciary duty grounds where a person is not already entitled to benefits. There were no procedural errors in the district court's grant of summary judgment.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.